L. E. SUMNER and Wife et als. v. L. L. STATON, Individually, and as Executor of Charlotte A. Knight, and SALLIE BAKER STATON.

(Filed 6 October, 1909.)

1. **Probate Court — Wills — Deeds — Fraud — Jurisdiction—Equity—Relief.**

    A court of equity has jurisdiction of an action brought by the next of kin and heirs at law to set aside a will for undue influence, when it appears that to afford the relief demanded it is necessary to cancel previous deeds for alleged fraud appearing to convey the same property to the executor and devisee under the will; and the Superior Court, in which the suit was brought, may proceed to hear and determine the case and administer all the rights and equities between the parties, as no adequate or complete remedy at law is given in proceedings before the clerk or probate court.

2. **Same—Trustee Ex Maleficio.**

    And if it should be established that the executor acquired the property by the deeds and under the will by fraud, the court, in administering the equities and doing substantial justice between the parties, will decree the executor a trustee *ex maleficio* for plaintiff's benefit and prohibit him and those claiming under him from setting up title; may require the executor to give bond *pendente lite,* and make such further interlocutory orders as may be expedient and right to preserve the rights of the parties.

3. **Same—Remedy at Law.**

    When it appears that a suit has been properly brought against one of the defendants in the Superior Court to set aside a will, for the reason of certain equities arising in setting aside a deed upon the ground of fraud, and necessary to be administered in order to give adequate and complete relief, it should be dismissed as to another defendant when relief can be had as to her in pro-

ceedings to caveat the will before the clerk (probate court) and concerning whose rights it is not necessary for the courts of equity to interfere.

WALKER, J., concurring, *arguendo*.

APPEAL by plaintiffs from the refusal of *O. H. Allen, J.,* to grant their motion for an injunction and receiver, in an action pending in EDGECOMBE and heard during the March Term, 1909, of the court.

The court, being of opinion "that it had no jurisdiction of that part of said action, in which it is sought to set aside the will of Mrs. Charlotte A. Knight for alleged fraud," etc., denied the motion for injunction and receiver. The plaintiff excepted and appealed.

The facts are stated in the opinion of the Court.

*F. S. Spruill* for plaintiff.
*Aycock & Winston* and *G. M. T. Fountain* for defendants.

BROWN, J.   On the argument, and in appellant's brief, exception is particularly taken to the opinion of his Honor that the fact that the defendant L. L. Staton being sole residuary legatee under the will of Charlotte A. Knight will in a measure affect the original equitable jurisdiction of the Superior Court to declare said Staton a trustee *ex maleficio* in respect to the property conveyed to him by certain deeds executed by Mrs. Knight, and deprives the court of jurisdiction to make such interlocutory orders as are necessary to preserve the property during the pendency of the action.   This feature of the case is the only matter presented for our consideration.

It appears that Mrs. Knight was the absolute owner of a considerable estate, consisting of valuable real and personal property, which she conveyed to the defendant L. L. Staton by two deeds—one dated 2 May, 1900, and the other 4 May, 1906.   On 16 March, 1904, Mrs. Knight executed a will, in which she made a few insignificant bequests of spoons and other articles of personalty of small value, and then devised the "Bennett Jenkins place" to Bettie L. Sumner, and all the residue of her estate (real and personal) to Dr. L. L. Staton and Henry Johnson as residuary legatees, and appointed Dr. Staton executor to her will. No specific bequest or devise is made to him or to Johnson. On 25 September, 1906, Mrs. Knight, by a codicil to her will, revoked the devise to Bettie S. Sumner and devised the "Bennett Jenkins place" to Sallie Baker Staton, daughter of Dr. Staton, and at the same time revoked the devise to Henry Johnson and made Dr. Staton her sole residuary legatee.   It is contended

that a court of equity cannot interfere with the property conveyed to Dr. Staton in the deeds until the devise by will is set aside by a separate proceeding, commenced before the clerk (the probate court), wherein the issue of *devisavit vel non* may be raised by a *caveat* and transferred to the Superior Court for determination.

It is manifest that if the deeds are set aside Dr. Staton will take the property as residuary legatee, and if the devise only is set aside he will take it under the deeds. So both must be set aside to give the full relief asked. As the probate court has no equitable jurisdiction to set aside the deeds, the question arises, must the plaintiffs prosecute two independent proceedings commenced in different jurisdictions, which may terminate differently, or will a court of equity, if the facts be as alleged, convert said defendant into a trustee for plaintiffs' benefit, notwithstanding the fact that one of the methods by which he can claim title to the same property conveyed in the deeds is by a residuary clause in a will?

The plaintiffs are the next of kin and heirs at law of Mrs. Knight. They allege that the defendant, Dr. Staton, was for many years before her death the physician, confidant and adviser of Mrs. Knight, who was an old, feeble, childless widow, greatly addicted to the use of drugs, of weak mind and easily influenced, and that she was dominated by the superior mind and will of her confidential physician, upon whom she was largely dependent. Plaintiffs aver that Dr. Staton, taking advantage of his relations to Mrs. Knight, formed the design to acquire title to practically all of her estate, and that in pursuance of his scheme he wrongfully and fraudulently caused Mrs. Knight to execute the deeds referred to, and, for further protection to his title, caused her to make him sole residuary legatee under her will. These grave charges are fully met and denied by Dr. Staton in his answer.

The complaint, it is true, unnecessarily and improperly divides what is really one cause of action into three, but we will consider the substance of the charges made, rather than the manner and form in which they are pleaded.

We concur generally in the position taken, that since the cases of *Allen v. McPherson* and *Kerrick v. Bransby* were decided by the House of Lords, it is well settled in Great Britain, where the question was debated *pro* and *con.* for many years, that a court of equity will not entertain a bill, the sole object of which is to set aside the probate of a will upon the ground of fraud. This ruling has been followed by the Supreme Court of the United States (*Broderick's will,* 88 U. S., 504) and by other courts in this country, very generally. It is to be borne in mind, however,

that the principal reason assigned in support of the ruling is that the probate courts themselves have all the powers and machinery necessary to give full and adequate relief, and therefore equity will not interfere. *Vide* opinion of *Justice Bradley, In re Broderick's will, supra,* p. 510.

These plaintiffs are not seeking to set aside the probate of a will, but to convert the defendant, Dr. Staton, into a trustee *ex maleficio,* upon well-recognized grounds of legal fraud, as laid down by *Lord Hardwicke* in *Chesterfield v. Jansen,* 2 Ves., 125; 1 Leading Cases in Eq., 341, and by *Chief Justice Pearson* in *Lee v. Pearce,* 68 N. C., 80. That a court of equity may convert a party into a trustee upon the ground of fraud is undisputed. *Wood v. Cherry,* 73 N. C., 110. And it would seem logically to follow that, where the fraudulent grantee has so fortified himself by various muniments that a court of law cannot give complete and adequate relief, a court of equity will undertake it. If the defendant claimed title to the property solely by virtue of the residuary clause in Mrs. Knight's will, then it would be undeniable that a proceeding to *caveat* the will in the probate court would give adequate relief, and we should dismiss this action. But in a case like this, where the muniments of title to the same property, alleged to be fraudulently appropriated, consists of two deeds and a residuary clause in a will, it is plainly manifest that the probate court cannot give an adequate remedy and can afford only partial, if any, relief. An adequate remedy is not a partial remedy. It is a full and complete remedy, and one that is accommodated to the wrong which is to be redressed by it. It is not enough that there is some remedy at law; it must be as practical and as efficient to the ends of justice and its prompt administration as the remedy in equity.

In commenting upon this subject the Supreme Court of the United States says: "The jurisdiction in equity attaches, unless the legal remedy, both in respect to the final relief and the mode of obtaining it is as efficient as the remedy which equity would afford under the same circumstances." *Gormley v. Clark,* 134 U. S., 338; *Boyce v. Grundy,* 3 Peters (U. S.), 210; Bispham Eq. (6th Ed.), sec. 37.

There is another principle of equity jurisprudence equally well founded, and that is that equity will not suffer a right to be without a remedy. "And it may be further observed," says Mr. Bispham, "that equity will not only not support a right to be unaccompanied by a remedy, but it will make the remedy, when applied, a complete one." This learned and accurate writer states another rule of equity courts which fits exactly such a condition as this case presents: "When a court of chancery acquires

jurisdiction for any purpose, it will, as a general rule, proceed to determine the whole cause, although in so doing it may decide questions which, standing alone, would furnish no basis of equitable jurisdiction." Bispham (6th Ed.), sec. 37. To the same effect are our own decisions. *Oliver v. Wiley,* 75 N. C., 320; *Devereux v. Devereux,* 81 N. C., 18.

While a court of equity will not generally interfere to set aside the judgment or probate of a will procured by fraud, yet it has assumed jurisdiction to decree a trust where there is a gift to an executor (as alleged in this case), under such circumstances that it ought to be a trust for the testator's relations. 1 Perry on Trusts, sec. 182.

In the *Broderick case, supra, Mr. Justice Bradley* notes that there are occasional exceptions to this rule of noninterference by courts of equity with wills and devises, which, being placed on special grounds, tend rather to establish than to weaken its force. He cites a case which, upon examination, tends strongly to support our view: One who was both executor and residuary legatee to a will (as Dr. Staton is in Mrs. Knight's will) procured probate of a forged will by fraudulently inducing the testator's son to execute a deed consenting to and confirming its probate. Lord Hardwicke entertained a bill to declare the deed void, and compelled the executor to consent to a revocation of the probate, placing his judgment upon the ground that the ecclesiastical court, which had exclusive jurisdiction over the probate of wills, had no power to annul the deed in order to give full relief, which was essential. This great chancellor, having assumed jurisdiction for the purpose of annulling the deed, gave complete relief by forcing the executor to revoke the probate. *Barnesley v. Powell,* 1 Vesey Sen., 284.

In his opinion the Lord Chancellor recognized the general rule as laid down in *Bransby v. Kerridge,* 7 Bro. P. C., 437, and the similar case of *Archer v. Moss,* 2 Vesey, 8, that a court of equity will not entertain a bill solely to set aside a probate of a will upon the ground of fraud.

In *Allen v. McPherson,* 1 Phillips, 133, and 1 House of Lords Cases, 191, wherein this doctrine is elaborately discussed, *Lord Lyndhurst* recognizes the duty of the chancellor to take jurisdiction in such cases, where the court of probate cannot afford adequate relief; and so does *Justice Bradley,* in the *Broderick case,* when he says: "It (equity) will only act on cases where the latter court can furnish no adequate remedy."

*Judge Story* also recognizes the general rule that equity will exercise complete jurisdiction in cases of fraud, where the remedy is beyond the reach of the courts of law. 1 Story Eq., p. 199.

In a note to Pomeroy's Eq., vol. 2, sec. 913, it appears from many cited cases that, while equity does not generally assume jurisdiction to set aside a probate of a will upon the ground of fraud in obtaining the will, there does not seem to be an insuperable objection, on principle, to the granting of appropriate relief against the probate itself on account of proceedings independently of the will.

The complaint in this case sets forth a connected history of a series of transactions between her confidential and trusted physician and the testator, a feeble and infirm old woman, which has resulted, as alleged, in the transferring of practically her entire estate to him, to the exclusion of her next of kin. These transactions comprise in part the execution of a will and codicil, in which the physician is made sole residuary legatee and executor, thus fortifying and strengthening his grip upon her estate.

It is impossible to sever this last-mentioned act from the others; and in order to give complete relief, if the allegations of the complaint are established, the court will not only set aside the deeds, but will prohibit Dr. Staton and those claiming under him from taking the property under the residuary clause of the will.

It is suggested that the better procedure is to *caveat* the will and, when that issue is transferred to the Superior Court for trial, consolidate it with this action to set aside the deeds. Consolidation of actions is generally a matter of discretion with the trial judge, and the result might be that practically the same issues and evidence might have to be presented to two different juries, who might reach different conclusions.

Not only is the form of the issue of *devisavit vel non* so different from other issues that consolidation is rather impracticable, but there is no reason for such circumlocution to get the whole controversy properly before the judge and jury.

The court, having undoubted jurisdiction over the person and the subject-matter, will make such decree as is necessary to afford complete relief in case the issue be found against the defendant.

This issue, or some similar one, when determined by the jury, will enable the court to give full relief and to do substantial justice between the parties, viz.: Did the defendant, L. L. Staton, acquire title to the real and personal property described in the complaint and the exhibits attached thereto by fraud, as alleged in the complaint? If it is answered in the affirmative, the court will set aside the deeds and decree the said defendant a trustee for plaintiff's benefit and forever prohibit him and those who may claim under him from setting up title under the residuary clause in the will. It would then also be in order for the clerk,

upon application, to remove the executor and appoint an administrator, with whom said defendant would be required to account for the personal property, to the end that it be administered as if Mrs. Knight had died intestate.

In the meantime, in order to protect the rents of the land and to preserve the personalty *pendente lite,* the judge of the Superior Court has jurisdiction to make such interlocutory orders in respect to requiring bond from the defendant, and the like, as may be deemed necessary and expedient to preserve the rights of all parties.

In regard to the status of the defendant Sallie Baker Staton, it necessarily follows from what we have said that this action must be dismissed, as to her, for want of jurisdiction. The devise to her is in no way connected with her father's claim of title, although his undue influence is alleged to have induced it. She sets up no title, except by devise, and it is therefore manifest that proceedings by *caveat,* commenced before the clerk, will give adequate relief as to her, and the interference of a court of equity is unnecessary. It is not essential in such proceedings that the entire will be contested and set aside. Under proper issues and instructions, the controversy may be directed to the validity of the devise to Sallie B. Staton.

It is well settled that when the probate of a will is contested on the ground of undue influence, one or more of the provisions may be sustained as valid, while others are set aside. The whole will is not necessarily void because of undue influence, but it will be left to the jury to determine what gifts or devises were obtained by such fraudulent influences, and such gifts and devises only will be declared void.

Jarman on Wills (5th Am. Ed.), pp. 70-71; *Eastis v. Montgomery,* 93 Ala., 299, and cases cited. Upon a review of the case, we are of opinion that his Honor erred in holding that the Superior Court did not have complete jurisdiction.

The cause is remanded, to be proceeded with along the lines laid down in this opinion.

Reversed.

WALKER, J., concurring: I cannot better express my concurrence in the opinion of the Court than by quoting at some length, though not literally, from the most excellent treatise of Pomeroy on Equity Jurisprudence. The doctrine is fully settled by an unbroken line of decisions, extending to the present day, that, with one remarkable exception, the jurisdiction of equity exists in and may be extended over *every* case of fraud, whether the primary rights of the parties are legal or equitable,

·Sumner *v.* Staton.

and whether the remedies sought are equitable or simple pecu-
niary recoveries, and even though courts of law have a concur-
rent jurisdiction of the case and can administer the same kind of
relief. The English judges have virtually said that in every
case of fraud the remedy at law, either from the nature of the
legal relief itself or from the methods of legal procedure,. is in-
adequate. The only question, therefore, presented to an Eng-
lish court is, not whether the equitable jurisdiction *exists,* but
whether it should be exercised. 2 Pom. Eq. Jur. (3d Ed.), sec.
912. The marked exception to the jurisdiction referred to in
the foregoing paragraph is that of canceling wills obtained by
means of fraud. In a· few very early decisions the court of
chancery seems to have asserted such a jurisdiction. For more
than a century, however, and through a long series of cases, the
judges have either refused to exercise the jurisdiction or denied
its existence; and it has finally been settled by the tribunal of
last resort that, under their general jurisdiction, courts of equity
have no power to entertain suits for the purpose of setting aside
or canceling a will on the ground that it was procured by fraud.
The same rule has been generally adopted in the United States.
Under the common-law system, the validity of wills of real estate
could only be tested in an action at law; that of wills of personal
estate was established by the decree of the ecclesiastical court in
proceedings for probate. Under the statutory system generally
prevailing in this country, both wills of real estate and wills
of personal estate are admitted to probate; in some of the States
the decree of the probate court is conclusive with respect to both
kinds; in other States it is conclusive only with respect to those
of personal property. 2 Pom. Eq. Jur. (3d Ed.), sec. 913.
Although an entire will cannot be set aside on account of fraud,
yet a particular devise or bequest may be impressed with a trust
in favor of a third person, for whom the testator's beneficial in-
tentions have been fraudulently intercepted and prevented by
the actual devisee or legatee; and in the same manner the land
descending to the heir may be impressed with a trust, where he
has prevented the testator from making an intended devise by
fraudulently representing to the testator that his intention will
be carried into effect towards the beneficiary as fully as though
the devise were made. Where a *probate* is obtained by fraud,
equity may declare the executor, or the other person deriving
title under it, a trustee for the party defrauded. The jurisdic-
tion in the case of intended testamentary gifts fraudulently pre-
vented extends to other analogous cases. Where one person has
been prevented by fraud from doing an intended act for the
benefit of another, equity may relieve the disappointed party by

establishing his right, as though the act had been done, and by confirming the title which he would thereby have acquired. Conversely, when instruments have been fraudulently suppressed or destroyed for the purpose of hindering or defeating the rights of others, equity has jurisdiction to give appropriate relief by establishing the estate or rights of the defrauded party. 2 Pom. Eq. Jur. (3d Ed.), sec. 919. Mr. Pomeroy further says: There is still a third aspect of the remedial action of equity which should be accurately understood, since it lies at the foundation of much of the dealing of the court of chancery with the legal estate and rights, and. especially those conferred by the positive provisions of statutes. I mean the most important principle, that equity acts upon the conscience of a party, imposing upon him a personal obligation of treating his property in a manner very different from that which accompanies and is permitted by his mere legal title. Whenever a legal estate is, by virtue of some positive rule of either the common or statute law, vested in A, but this legal estate in A is of itself a violation of some settled equitable doctrines and rules, so that B is equitably entitled to the property or to some interest in or claim upon it, equity grants its relief and secures to B his right, not by denying or disregarding or annulling or setting aside A's legal estate, but by admitting its existence, by recognizing it as wholly vested in A, and then by working upon A's conscience and imposing upon him the duty of holding and using his legal title for B's benefit; so that, in the ordinary language of the courts, he is treated as a trustee for B. One or two familiar examples will illustrate the working of this fundamental principle. A testator has given certain lands to A by a will, properly executed, but A procured the devise by wrongful representations made to the testator, and the lands should, by the doctrines of equity, belong to B. The statute of wills, however, is peremptory in its prescribed mode of executing a will; there can be no will without conforming to the statutory requirements. Equity does not attempt to overrule the statute; it admits the validity of the will and the legal title vested in A, but, on account of A's wrongful conduct in procuring the devise to himself, it says that he cannot conscientiously hold and enjoy that legal title for his own benefit, and imposes upon his conscience the obligation to hold the land for B's benefit as the equitable owner thereof; and then arises the further obligation upon his conscience to perfect and complete B's equitable ownership by a conveyance. 1 Pom. Eq. Jur., sec. 430. *Lord Westbury* said, in *McCormick v. Grogan,* L. R., 4 H. L., 82, 97, that "A court of equity has from a very early period decided that even an act of Parliament shall not be used as an instrument

of fraud; and if in the machinery of perpetrating a fraud, an act of Parliament intervenes, the court of equity, it is true, does not set aside the act of Parliament, but it fastens on the individual who gets a title under that act, and imposes upon him a personal obligation, because he applies that act as an instrument for accomplishing a fraud. In this way the court of equity has dealt with the statute of wills and the statute of frauds." Although *Lord Westbury* here speaks only of a case where the equitable rights of one person arise from the frauds of another who has thereby obtained the legal estate, yet the principle applies, whatever be the grounds and occasion of the equitable interest and claims which are asserted in opposition to the one having the legal title. 1 Pom. Eq. Jur., 431.

These authorities would seem to sustain the very proposition involved in this case, that while a court of equity has no jurisdiction to invalidate a will or to set aside a probate, except, perhaps, in the latter case, when fraud in the procurement of the probate appears, because of the exclusive jurisdiction of the ecclesiastical court and, under our system, the clerk of the Superior Court, in such matters, it will treat the will as valid and work out the equity of any party justly entitled as a beneficiary, being the real object of the testator's bounty, by decreeing the person who has acquired the legal estate by any fraudulent method or contrivance which defeated the testator's intention as a trustee for such beneficiary. It does not assume jurisdiction to pass upon the validity of the will, which belongs to another tribunal, but, giving full scope to the jurisdiction and recognizing its plenary power in such cases, proceeds to exercise its own jurisdiction in harmony therewith, and acts solely upon the conscience of the party who has committed the fraud, compelling him to surrender, under its process, his ill-gotten gains.