WILLIAM FREDERICK GADDY v. NORTH CAROLINA NATIONAL BANK, EXECUTOR AND TRUSTEE OF THE ESTATE OF W. F. GADDY; AND GERALDINE G. ELDRIDGE, JACK GADDY, AND VERA H. GADDY, DEVISEES UNDER THE WILL OF W. F. GADDY

No. 7423DC997

(Filed 19 March 1975)

1. Appeal and Error § 30— objection to evidence — similar evidence admitted without objection

Exception to the admission of evidence will not be sustained when evidence of like import has theretofore been, or is thereafter, introduced without objection.

2. Contracts § 12— intention of parties — understanding of one party — knowledge by other party

Where an agreement between plaintiff and defendant executor provided that plaintiff "agrees to accept at face value, including all accrued interest," notes issued to decedent by a corporation of which plaintiff was sole shareholder as partial distribution of plaintiff's share under decedent's will, and the evidence tended to show that defendant knew, or had reason to know, that plaintiff understood the language in the contract to mean that interest on the notes would not accrue after the date of the agreement, the intention of the parties was plaintiff's interpretation which defendant understood, not the language *per se* in the agreement, and defendant is in effect estopped to assert a different meaning.

APPEAL by defendant from *Osborne, Judge.* Judgment entered 5 September 1974 in District Court, WILKES County. Heard in the Court of Appeals 13 February 1975.

This civil action, instituted on 29 January 1974, was brought under the Declaratory Judgment Act, G.S. 1-253 *et seq.,* for the purpose of having the court construe a contract entered into on 11 June 1971 between plaintiff and North Carolina National Bank, as Executor and Trustee under the Last Will and Testament of W. F. Gaddy (father of plaintiff), deceased. The contract provides in pertinent part:

THIS CONTRACT, made and entered into this 11 day of June, 1971, by and between WILLIAM FREDERICK GADDY, of Wilkes County, North Carolina, party of the first part; and NORTH CAROLINA NATIONAL BANK, as Executor and Trustee under the last will and testament of W. F. Gaddy, deceased, a duly organized banking corporation, party of the second part;

## WITNESSETH:

WHEREAS, the party of the first part is the sole owner and shareholder of a corporation known as "Gaddys, Inc.," which, among other things, is engaged in the real estate business; and whereas, said corporation has purchased and has borrowed from W. F. Gaddy and/or Vera H. Gaddy various sums of money in excess of $100,000.00, as evidenced by notes held by party of the second part in the estate of W. F. Gaddy, deceased; and whereas, party of the first part, as sole shareholder of Gaddys, Inc., is desirous of making arrangements with party of the second part, whereby party of the second part will not demand payment of the notes, when due, and party of the second part is agreeable to forebearance of collection upon the terms and conditions hereinafter set forth;

Now, THEREFORE, in consideration of the mutual covenants and conditions hereinafter set forth, IT IS AGREED:

(1) Party of the first part, as beneficiary under the last will and testament of W. F. Gaddy, deceased, *agrees to accept, at face value, including all accrued interest,* those notes issued by Gaddys, Inc., in favor of W. F. Gaddy, deceased and/or Vera H. Gaddy (which notes are now held by party of the second part), as partial distribution of the share due party of the first part under the last will and testament of W. F. Gaddy, deceased. (Emphasis added.)

(2) In consideration of the agreement to accept said notes at face value, plus accrued interest, without recourse, party of the second part agrees that it will not demand payment of said notes as the same becomes due and will not take action for collection by reason of default in the payment thereof.

. . .

Plaintiff alleged that he was advised by an agent of defendant bank that interest on the notes would terminate as of the date of the contract; however, in the proposed distribution of the estate of W. F. Gaddy, defendant bank has charged plaintiff with interest from 11 June 1971 until the date of distribution. Plaintiff prayed that the court declare the rights of the parties under the contract and that defendant bank not charge plaintiff's share of the distribution with interest after 11 June 1971.

In their answer, defendants bank and Jack Gaddy denied that bank's agent advised plaintiff that interest would accrue only to 11 June 1971; they admitted that interest had been included in plaintiff's share until the date of distribution of the estate. Answering defendants further alleged that by virtue of the phrase in the contract "agrees to accept", interest should be included until the estate is distributed. They prayed that interest in amount of $18,734.08 be charged to plaintiff's share.

At trial plaintiff introduced evidence that tended to show: *Prior* to the signing of the contract, Miles Frost, trust officer of defendant bank, told plaintiff that interest would not accrue on the notes beyond 11 June 1971. (Defendants objected to this testimony as an attempt to vary the written words of the contract. The court overruled the objection.) C. M. Drum, a C.P.A., testified without objection with respect to a conversation with Frost *subsequent* to the execution of the contract as follows:

. . . In June of 1971, I remember a conversation with Mr. Frost concerning Gaddy's, Inc. notes. Miles came to my office and told me that—This was in June of '71. Mr. Frost came to my office. And as I remember, he was very elated at that time. He told me that he had met with Fred Gaddy earlier. And he was very happy that he had been able to persuade Mr. Gaddy to take these notes from Gaddy's, Inc. as a partial distribution of his equity or his interest in the estate of W. F. Gaddy. He was happy that he had been able to do this because he was of the opinion that at the time

they got ready to settle the estate that Gaddy's, Inc. would be insolvent. He would be stuck with some worthless notes. HE TOLD ME AT THAT TIME THAT AS A CONDITION OR AS A MEANS OF INDUCING MR. GADDY TO TAKE THESE NOTES, WHICH WOULD NOT FALL DUE · FOR SEVERAL YEARS HENCE, THAT THERE WOULD BE NO INTEREST ON THE NOTES AFTER THAT DATE. AFTER THAT DATE, YES, SIR. . . . (Emphasis added.)

On recross examination, Drum stated: " . . . That was Mr. Wrenn's (another trust officer of defendant bank) indication that on the contract the interest was computed. But he also indicated that perhaps Miles had reached a different agreement and he was not sure what Miles' agreement was."

Defendants' primary witness, Miles Frost, testified: " . . . We did not waive any of the principal or any of the interest. Nothing was said about stopping the interest or anything like that. . . . " He denied making the statement as testified to by Drum but stated: " . . . I'm sure that I might have mentioned the fact about paying interest to himself and that sort of thing, which made it attractive, I would think, to Mr. Gaddy. That could have come up. I don't know."

The court entered judgment finding facts and adopting conclusions of law as contended by plaintiff. On the crucial finding, the court found that the agreement was prepared by the attorney for defendant bank and " . . . [t]hat it was the intent of said agreement that the agreement speak as of the 11th day of June, 1971, and that no accrued interest would accumulate on said notes beyond 11 June 1971". The conclusion of law vital to this appeal is: ·

(2) That the contract dated 11 June 1971 . . . speaks as of the 11th day of June, 1971, and that the phrase "including all accrued interest" is construed to mean that no interest would accrue on said notes past the 11th day of June, 1971, and that therefore, the plaintiff is entitled to his distributive share under the will of W. F. Gaddy, less the face value of said four promissory notes . . . with accrued interest to and including 11 June 1971.

The judgment decreed that defendant bank distribute to plaintiff his distributive share of the estate, less the face value of the notes and accrued interest due on the notes up to and

including 11 June 1971. Defendants bank and Jack Gaddy appealed.

*Vannoy, Moore and Colvard, by J. Gary Vannoy, for plaintiff appellee.*

*W. G. Mitchell for defendant appellants.*

BRITT, Judge.

In their brief, appellants state the questions presented as follows:

(1) Did the Court below err by admitting testimony in contradiction of the written contract dated June 11, 1971 between Fred Gaddy and North Carolina National Bank?

(2) Did the Court below err by finding facts as follows:

(a) That it was the intent of said agreement that the agreement speak as of the 11th day of June, 1971, and that no accrued interest would accumulate on said notes beyond June 11, 1971?

(b) That none of the beneficiaries of the will have appeared to contest, the plaintiff's interpretation of said agreement dated June 11, 1971?

(3) Did the Court below err in its Conclusion of Law that the phrase "including all accrued interest" means that no interest would be due after June 11, 1971; and, further, by signing the Judgment as appears of record?

[1] Appellants' argument with respect to the first question appears to be directed primarily to the testimony of plaintiff, and particularly that part pertaining to plaintiff's conversation with defendant bank's agent Frost prior to, and at the time of, the signing of the agreement. While defendant bank entered numerous objections to plaintiff's testimony, plaintiff's witness Drum provided very similar testimony to which there was no objection. It is well settled that exception to the admission of evidence will not be sustained when evidence of like import has theretofore been, or is thereafter, introduced without objection. *Glace v. Pilot Mountain,* 265 N.C. 181, 143 S.E. 2d 78 (1965). Therefore, assuming *arguendo,* that the court erred in admitting the testimony objected to, we think evidence of like import

was admitted without objection, thereby rendering any error harmless.

[2] The main focus of the controversy presented by this appeal is on the phrase of the agreement "including all accrued interest", and whether the interest on the notes stopped accruing on 11 June 1971, the date of the agreement, or whether the interest continued to "accrue" until the estate was settled. Defendant bank insists that the court is bound by the rule restated in *Corbin v. Langdon*, 23 N.C. App. 21, 25, 208 S.E. 2d 251 (1974), " . . . that when the language of a contract is clear and unambiguous, the court must interpret the contract as written . . . . " While we recognize the validity of this rule, we do not think it controls this case.

In *Oldham v. Kerchner*, 79 N.C. 106, 111 (1878), Justice Rodman, speaking for the court, said: " . . . If the words are clear and unequivocal, neither party can say that he understood them in a different sense from what they plainly bear; *and if either party knows that the other understands him as speaking of one object, or with one meaning, he will not be allowed to say that he had in his mind another object, or intended a different meaning. . . . *" (Emphasis added.)

In 3 Corbin, Contracts § 537, at 45 (1960), we find similar language. " . . . If . . . A knew or had reason to know the meaning that B in fact gave to A's promissory words, then the substantive law declares that B's understanding shall be given legal effect. . . ." *See also* Corbin, *supra,* § 610; 13 Williston, Contracts §§ 1573, 1577 (Jaeger ed. 1970 and 1974 Supp.) ; Restatement of Contracts § 505 (1932).

In deciding what evidence should be allowed to determine the meaning of the portion of the contract under consideration, Corbin, *supra* at 48-9 states:

> But there are now two separate issues before the court; (1) What was the meaning that B in fact gave to the quoted promissory words? (2) Did A know or have reason to know that B gave the words that meaning? On each of these issues, the court should admit all relevant evidence; it should know all surrounding circumstances that may have influenced B's interpretation of the words, and also all that tend to prove or to disprove knowledge, or reason to know, on A's part. All other circumstances are immaterial and should be excluded.

If the second of these issues is found affirmatively by the court, this determines *whose* meaning must be given effect; it is B's meaning. And the process of interpretation has been and still is the process of determining what B's understanding was. It is not the meaning that A gave; or the meaning that a normal user of English would have given; or the meaning that the court may hastily think is "plain and clear." All of these should be considered in the process of determining whether or not B in fact held any of them, and also in the process of determining whether or not A had "reason to know" the understanding that B had. But they are merely steps in the evidential search of B's meaning and A's reason to know it; no one of them is the one that must itself prevail. All of them together, even though they happen to be identical, may be wholly overpowered by other more compelling testimony.

Applying the stated principles to the case at bar, we conclude that the evidence fully supports a finding that defendant bank's agent Frost knew the interpretation that plaintiff was giving to the agreement, " . . . that there would be no interest on the notes after that date (11 June 1971)".

Assuming that the words of the agreement are unambiguous, the parol evidence rule is not applicable in this case for the reason that the intention of the parties was plaintiff's interpretation which defendant bank understood, not the language *per se* in the contract. The evidence tended to show that defendant bank knew, or had reason to know, that plaintiff understood the language in the contract to mean that interest would not accrue after 11 June 1971. Defendant bank in effect is estopped to assert a different meaning. 13 Williston, Contracts § 1577, at 505 (Jaeger ed. 1974 Supp.).

With respect to the court's finding " . . . [t]hat none of the beneficiaries of the will have appeared in this action to contest the plaintiff's interpretation of said agreement . . . " , it is true that the beneficiary Jack Gaddy is an appellant. While technically this finding was erroneous, we conclude that it was not prejudicial to defendants.

For the reasons stated, the judgment appealed from is

Affirmed.

Judges CLARK and ARNOLD concur.