THE MUNCHAK CORPORATION (Delaware) and RDG CORPORATION, a joint
   venture d/b/a THE CAROLINA COUGARS and THE MUNCHAK CORPORA-
   TION (Georgia) v. JOE L. CALDWELL

No. 7918SC814

(Filed 6 May 1980)

1. Evidence § 22.1— trial of defendant's counterclaim—admissibility of record of
   plaintiff's claim

   In a trial on defendant's counterclaim for specific performance of a con-
   tract, the trial court did not err in permitting defendant to introduce into
   evidence the entire record from an earlier trial of plaintiffs' claim for reforma-
   tion of the contract where the complaint and counterclaim were filed in the
   same lawsuit and constituted two parts of the same action, and the claims for
   reformation and specific performance were severed for trial.

2. Contracts § 16.1; Pensions § 1— pension provisions—time of funding—amount,
   frequency, duration of payments—definiteness of agreement

   Pension benefit provisions of the contract of defendant professional
   basketball player was not too indefinite as to the time of funding to be
   specifically enforced where it is clear that the pension plan was to be funded
   at least by the time defendant ceased playing for the Carolina Cougars. Nor
   were the pension provisions too ambiguous as to amount, frequency and dura-
   tion of retirement benefits to be specifically enforced where the only term
   contested by plaintiff—the amount of the monthly payment—has been con-
   clusively determined by the courts of this State in plaintiffs' action for refor-
   mation, and the contract provisions show that, upon reaching age 55, defend-
   ant will be entitled to receive each month for the rest of his life the sum of
   $600 multiplied by the number of years he played professional basketball.

3. Specific Performance § 1— portion of contract unenforceable—specific per-
   formance of other portions

   Specific performance of a portion of a contract may be granted even
   where certain other portions are impossible to perform and cannot be en-
   forced.

4. Pensions § 1; Specific Performance § 3— pension provisions of con-
   tract—inadequacy of remedy at law

   Defendant's remedy at law was inadequate so that he was entitled to
   specific performance of the pension provisions of his contract as a professional
   basketball player where defendant would have to wait until he was 45 years
   old if he wished to exercise the early retirement provision of the contract or
   otherwise until he was 55 years old; if plaintiffs failed to comply with the pro-
   visions, defendant would be put in a position of continually going to court as
   the pension payments became due; and plaintiffs may not be financially sol-
   vent, in existence or able to fund the pension when defendant reaches the age
   of 45.

Munchak Corp. v. Caldwell

5. **Pensions § 1; Specific Performance § 2— pension provisions of contract — alleged misunderstanding of terms by plaintiffs**

There is no merit in plaintiffs' contention that specific performance of the pension provisions of the contract of a professional basketball player should not be granted because plaintiffs did not understand that the pension provisions might mean what the superior court decreed they mean where the contract was negotiated, prepared and examined by businessmen experienced in the area of player contracts and professional basketball franchises, and the courts have conclusively and finally determined that both parties executed the contract in accord with their intentions.

6. **Pensions § 1; Specific Performance § 1— specific performance of pension provisions — sufficiency of complaint**

Defendant's counterclaim was sufficient to state a claim for specific performance of the pension provisions of his contract as a professional basketball player.

7. **Evidence § 13; Courts § 9— ruling on attorney-client privilege — no authority by another judge to set aside**

A superior court judge could not set aside the ruling of another superior court judge in the same action that documents from the file of defendant's former lawyer were protected from disclosure by the attorney-client privilege.

8. **Pensions § 1; Contracts § 20.1— pension provision — impossibility of performance**

The trial court did not err in ruling that a contract provision requiring plaintiffs to provide defendant basketball player with "life insurance in an amount equal to one hundred (100) times the *cash value* of the pension described above from the date he ceases to play professional basketball until the date that he commences drawing retirement" was impossible to perform and could not be specifically enforced since the cash value would range from approximately $360,000 when defendant ceased playing basketball to approximately $910,000 at the time defendant became eligible to draw retirement, and it is commercially impossible to insure an individual for an amount ranging from $36 million to $91 million (100 times the cash value). Furthermore, the trial court had no authority to modify the contract so that plaintiffs would be liable to provide life insurance at 100 times the amount of the monthly pension benefit.

9. **Attorneys at Law § 7.1— attorney fees — provision in contract — applicability to actions involving third parties**

Provision of a basketball player's contract in which plaintiffs agreed to indemnify the player for claims resulting from the player's execution of the contract and to pay all legal expenses in connection with such claims applied only to actions involving third parties and not to actions between the parties to the contract.

APPEAL by plaintiffs from *Mills, Judge.* Cross-appeal by defendant. Judgment entered 6 April 1979 in Superior Court, GUILFORD County. Heard in the Court of Appeals 6 March 1980.

This is an action on defendant's counterclaim for specific performance of a contract whereby defendant agreed to play basketball for the now defunct Carolina Cougars professional team. Article 5 of the contract, which dealt with defendant's pension benefits, was the subject of this controversy.

This action originally consisted of two parts: plaintiffs' claim for reformation of the contract and defendant's counterclaim. The parts were severed, and the claim for reformation was heard on 3 January 1977 in Superior Court, Guilford County. The trial court refused to reform the contract and held that plaintiffs were obligated to pay defendant $600 each month for each year defendant played professional basketball, such payments to begin upon defendant's retirement at age 55 and continue throughout defendant's life. Defendant has the option of taking early retirement at age 45, in which event the amount due would be actuarily determined.

Plaintiffs appealed the trial court's decision. This Court affirmed the trial court (37 N.C. App. 240, 246 S.E. 2d 13 (1978)). Discretionary review was denied by our Supreme Court (295 N.C. 647, 248 S.E. 2d 252 (1978)).

Subsequently, the second part of the action—defendant's counterclaim for specific performance—was heard. On 6 April 1979, Judge Mills gave judgment ordering plaintiffs to procure an insurance policy or a commitment to issue an insurance policy from an insurance carrier acceptable to defendant.

The court held that the policy must be sufficient to provide monthly benefits of $6,600 per month beginning at defendant's age 55 and continuing thereafter for his life, and reserved to defendant the right upon reaching age 45 to elect to receive monthly benefits in a lesser amount to be actuarily determined. In effect, the trial court granted specific performance of paragraphs 5(a) and 5(b) of the contract. Paragraph 5(c) was held to be impossible to perform.

Plaintiffs appealed to this Court, and defendant has cross-appealed the trial court's holding in reference to paragraph 5(c).

*Brooks, Pierce, McLendon, Humphrey & Leonard, by Hubert Humphrey, Edward C. Winslow III, and Paul E. Marth; Powell, Goldstein, Frazer & Murphy, by Frank Love, for plaintiff appellant Munchak Corporation (Delaware); and Younce, Wall & Chastain, by Percy L. Wall, for plaintiff appellant Munchak Corporation (Georgia).*

*Smith, Moore, Smith, Schell & Hunter, by Bynum M. Hunter, James L. Gale, Jeri L. Whitfield, and Alan W. Duncan, for defendant appellee.*

HILL, Judge.

[1] At the trial on defendant's counterclaim for specific performance, the trial court allowed defendant to introduce into evidence the entire record from the earlier hearing on plaintiffs' claim for reformation. Plaintiffs contend the court's action was in error.

It is clear that in most circumstances, testimony from a former trial is hearsay and inadmissible in a subsequent trial. "[P]reviously recorded testimony is authorized if it be shown that: (1) The witness is unavailable; (2) the proceedings at which the testimony was given was a former trial of the same cause, or a preliminary stage of the same cause, or the trial of another cause involving the issue and subject matter at which the testimony is directed; and (3) the current defendants were present at that time and represented by counsel." (Citations omitted.) *State v. Smith,* 291 N.C. 505, 524, 231 S.E. 2d 663 (1977).

In the case *sub judice*, however, we are presented with an exception. It is important to remember that there was only one action. The complaint and counterclaim were filed in the same lawsuit and constitute two parts of the same action. Both claims were heard in the superior court. If the claim had been heard on the same day, the parties and the judge would have been cognizant of and able to rely on evidence presented on the claim for reformation.

The record from the prior reformation hearing was properly admitted. To hold otherwise would be to destroy the ability of trial judges to exercise discretion by severing complicated cases into more understandable issues. Plaintiffs' first assignment of error is overruled.

Plaintiffs argue the trial court erred by decreeing specific enforcement of paragraphs 5(a) and 5(b) of the October 30, 1970 contract between the parties. Plaintiffs state several grounds for their position. The sole function of the equitable remedy of specific performance is to compel a party to do that which in good conscience he ought to do without court compulsion. *Bell v. Concrete Products, Inc.*, 263 N.C. 389, 390, 139 S.E. 2d 629, 630 (1965). The remedy rests in the sound discretion of the trial court, *Bradshaw v. Millikin*, 173 N.C. 432, 92 S.E. 161 (1917); and is conclusive on appeal absent a showing of a palpable abuse of discretion. *Highway Commission v. Hemphill*, 269 N.C. 535, 153 S.E. 2d 22 (1967).

Paragraph 5 of the contract states that:

At the time of the rendering of services to Club by Player, Player shall be eligible for and shall receive entitlement to pension benefits from an insurance carrier acceptable to Player at least equal to the following:

(a) The sum of Six Hundred Dollars ($600.00) per month for each year of services as a professional basketball player, which sum shall be paid at age fifty-five (55); and

(b) The right of early retirement at age forty-five (45) in which event the sum received shall be actuarily determined; and

(c) Life insurance in an amount equal to one hundred (100) times the cash value of the pension described above from the date that he ceases to play professional basketball and until the date that he commences drawing retirement.

[2] Plaintiffs argue the contract is too ambiguous to be specifically performed, first contending that the contract does not establish a specific time by which funding is required. We disagree. Defendant was entitled to have his pension funded *at least* by the time it was clear he would never again play basketball for the Cougars.

It is clear from the actions of the parties to the contract and from the language of the instrument that the parties meant to provide an ascertainable monthly benefit to defendant upon retirement for the rest of his life. It is clear that at the time

defendant rendered services to the Cougars, he was entitled to the pension benefits. It is clear that defendant would not have bargained so as to place himself in a situation where he might retire from basketball and have to wait two decades for his pension to be funded. After all, defendant had played basketball in the National Basketball Association (NBA) and was familiar with that league's established and protective pension plan. Finally, we cannot believe that businessmen as experienced as plaintiffs would plan to fund a pension with an insurance carrier when defendant reaches 55 years of age rather than when he was a younger man. The difference in the amount of the premiums is significant. We find that it is abundantly clear that the pension plan was required to be funded at least by the time defendant ceased playing for the Cougars.

Plaintiffs' second contention in their argument that the contract is too ambiguous to be specifically enforced is that amount, frequency and duration of the retirement benefit are stated too ambiguously. We disagree.

"A court of equity is not authorized to order the specific performance of a contract which is not certain, definite and clear, and so precise in all of its material terms that neither party can reasonably misunderstand it." (Citations omitted.) *Morris v. Yates,* 226 Ga. 43, 45, 172 S.E. 2d 428 (1970). We agree with the statement of the Georgia Supreme Court cited above, and find that there is only one logical interpretation of Paragraph 5.

This issue has already been decided. A jury found in 1977 that *both* parties to this action agreed defendant should receive "[t]he sum of *Six Hundred Dollars* ($600.00) per month for each year of service as a professional basketball player, which sum shall be paid at age fifty-five (55)." This Court affirmed the trial court, and our Supreme Court denied certiorari. We find that the logical interpretation to be given to Paragraph 5(a) is that upon reaching age 55 defendant will be entitled to receive each month for the rest of his life the sum of $600 multiplied by the number of years he played professional basketball.

Plaintiffs' own actions indicate they would agree with our holding. During the reformation phase of this hearing, plaintiffs argued that the term in Paragraph 5(a) should be sixty dollars, not six hundred, and that the maximum they would ever be

obligated to pay defendant under the contract would be $600 per month. The issue was decided against plaintiffs. Plaintiffs did not argue that the frequency and duration of the retirement benefit were ambiguous, only that there had been a mistake in the amount.

Furthermore, in 1973, plaintiffs purchased an annuity policy with the insured being defendant Caldwell. The policy provided for a pension of $696.75 per month, beginning at age 55, for the remainder of defendant's life. As of 1973, three years after the parties signed the contract in dispute, plaintiffs' actions indicate that they understood they owed *some* amount of money to defendant every month of his life after he reached age 55. The only term plaintiffs seemed to have any doubt about—the amount of the monthly payment—has been conclusively established by the courts of this State.

" '[I]f either party knows that the other understand him as speaking . . . with one meaning, he will not be allowed to say that he . . . intended a different meaning . . . .' " (Citation omitted.) *Gaddy v. Bank*, 25 N.C. App. 169, 174, 212 S.E. 2d 561 (1975). By their actions, plaintiffs have demonstrated that they understood the frequency and duration of the retirement benefit. The legitimate disagreement over the amount has been resolved by our courts. No ambiguity with respect to the amount, frequency, or duration exists.

[3] Plaintiffs argue that the contract must be enforced according to its terms or not at all. They argue that the trial court cannot enforce paragraphs 5(a) and 5(b) while holding 5(c) to be impossible to perform. "Equity can only compel the performance of a contract in the precise terms agreed on. It cannot make a new or different contract for the parties simply because the one made by the parties proves ineffectual. " (Citation omitted.) *McLean v. Keith*, 236 N.C. 59, 71, 72 S.E. 2d 44 (1952). In *McLean*, the plaintiffs wanted the Court to *imply* a contract term and specifically enforce that term. Such is not true in our case. In the case *sub judice* the trial judge simply struck a clause that was impossible to perform. A new contract was not made.

Plaintiffs also cite *Lawing v. Jaynes* and *Lawing v. McLean*, 20 N.C. App. 528, 202 S.E. 2d 334 (1974), *modified on other grounds*, 285 N.C. 418, 206 S.E. 2d 162 (1974), as authority for

their position. In *Lawing*, plaintiffs sought specific performance by defendant Joyner of an option to purchase real estate. Joyner had already conveyed a portion of the property to defendant McLean. This Court stated that ". . . specific performance may be decreed for the portion retained." (Emphasis added.) *Lawing* at 537. In a sense, this Court held in *Lawing* that specific performance of a contract *may* be granted even where certain parts are impossible to perform and cannot be enforced. We agree and find plaintiffs' argument to be without merit.

[4] Plaintiffs argue next that defendant is not entitled to specific performance because he has made no showing that he does not have an adequate remedy at law. We disagree.

> An adequate remedy is not a partial remedy. It is a full and complete remedy, and one that is accommodated to the wrong which is to be redressed by it. It is not enough that there is some remedy at law; it must be as practical and as efficient to the ends of justice in its prompt administration as the remedy in equity.

*Sumner v. Staton*, 151 N.C. 198, 201, 65 S.E. 902, 904 (1909).

Defendant's remedy at law is to wait until he is 45 years of age. At that point, if he wishes to exercise the early retirement provisions set forth in clause 5(b), defendant must demand that plaintiffs fund his pension. If plaintiffs fail to comply, then defendant would have to ". . . file suit for the amount of accrued arrearage, reduce [his] claim to judgment, and, if the [plaintiffs] [fail] to satisfy it, secure satisfaction by execution." *Moore v. Moore*, 297 N.C. 14, 17, 252 S.E. 2d 735 (1979).

As *Moore* points out, parties often persist in their refusal to comply with judgments. Defendant would be put in the position of continually having to go to court as the pension payments became due and plaintiffs failed to comply. "The expense and delay involved in this remedy at law is evident," *Moore* at 17; and we feel, inadequate.

Furthermore, there is no guarantee that plaintiffs will be financially solvent, in existence, or able to fund the pension when defendant reaches the age of 45. To force defendant to wait until the age of 45 before having any remedy would frustrate the intent of the parties in providing for pension benefits. After all, the

whole purpose of a pension is to *guarantee* a known and steady source of income for the time when a person is no longer able to earn at his peak level, or earn a living at all.

"Adequacy is open ended; it does not exist as a matter of rule, but as a matter of fact. Whether a legal remedy is adequate or not, and how it compares with equity remedies, is a matter of analysis in each case." Dobbs, Law of Remedies 61 (1973). Defendant in the case *sub judice* is in a situation similar to that in which the plaintiff in *Moore, supra,* found herself. Our Supreme Court held plaintiff's remedy at law in that case to be inadequate, and citing from McClintock on Equity, § 46, p. 110 (2d ed. 1948), observed that even if the remedy at law which the plaintiff in that case might eventually receive was adequate, the intervention of equity was not prevented " '. . . if the procedures which must be followed at law would make the remedy less efficient and practical to meet the plaintiff's needs.' " *Moore* at p. 17.

Defendant Caldwell showed that his remedy at law is inadequate. The plaintiffs' argument is without merit.

[5] Plaintiffs further argue that specific performance of the parties' contract should not have been granted because it works an injustice in this case. We do not agree. It is true that,

> The general rule may be laid down that a court of equity in the exercise of its discretion granting such relief will refuse to grant a decree of specific performance of a contract where the performance will produce hardship or injustice to the defendant [plaintiff here] not reasonably within the contemplation of the parties at the inception of the contract; . . . . 49 Am. Jur., Specific Performance § 59, P. 74.

Furthermore, if a person, from whom specific performance is sought, entered into the contract in question without understanding it, such performance will not be enforced. *Pendleton v. Dalton,* 62 N.C. 119 (1866).

Plaintiffs contend in their brief that defendant's actions were ". . . calculated to deceive and mislead plaintiffs' representatives and to take advantage of their misunderstanding of the contract." Plaintiffs further assert in their brief that evidence at trial tended to show that,

> [W]hile there may have been no mutual mistake and while it may have intended to sign the contract it signed, including the terms of paragraph 5 as they appear, it is clear that [they] never understood . . . that the terms of paragraph 5 might mean what the Superior Court decreed they mean . . . .

This Court and probably no other court will ever know if plaintiffs meant to contract for a pension of only $60 per month times the number of years defendant played professional basketball, or whether defendant, a highly skilled basketball player, employed an equally skilled negotiator who was able to guarantee, with a large pension, the safety of his client's jump from the established NBA to the fledgling American Basketball Association.

Such knowledge is immaterial, however. All we need to know is that the subject contract was negotiated, prepared and examined by professionals who were businessmen experienced in the area of player contracts and professional basketball franchises. Furthermore, and more importantly, we know that the courts of this State have conclusively and finally decided that *both* parties executed paragraph 5(a) of the contract in accord with their intentions. Plaintiffs belittle their own intelligence when they argue that they never understood a court might interpret the language, ". . . sum of Six Hundred Dollars ($600.00) per month for each year of services as a professional basketball player . . ." to mean that defendant is entitled to the pension our courts have already decreed he is to receive.

[6] Plaintiffs argue next that defendant's counterclaim for specific enforcement never should have been heard by the trial court. Plaintiffs contend the trial court erred by denying their motion to dismiss defendant's counterclaim for failure to state a claim. Plaintiffs' argument is without merit.

Defendant's counterclaim for specific performance states that:

> The defendant avers that the contract of October 30, 1970, as written, was the agreement of the parties. The defendant asks the Court to enter judgment requiring the plaintiff to specifically perform all of the terms and provisions of the

contract of October 30, 1970, and in particular the provisions of Article 5 of the contract as written.

Since the passage of the North Carolina Rules of Civil Procedure, in particular G.S. 1A-1, Rule 8(a)(1), which took effect on 1 January 1970, the State has followed the concept of notice pleading. No longer must a pleading detail the facts which constitute the cause of action. *See Sutton v. Duke*, 277 N.C. 94, 176 S.E. 2d 161 (1970).

In explaining its interpretation of Rule 8(a)(1), Justice Sharp (later Chief Justice), speaking for our Court in *Sutton*, stated that, "The North Carolina Rules of Civil Procedure are modeled after the federal rules." *Id.* at 99. Justice Sharp went on to state that the Court would examine federal case law for guidance in developing the philosophy of the State's Rules of Civil Procedure. The *Sutton* court then cited *Conley v. Gibson*, 355 U.S. 41, 2 L.Ed. 2d 80, 78 S.Ct. 99 (1957), for the proposition that ". . . all the [Federal] Rules require is 'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Sutton* at p. 102. The *Sutton* court went on, at p. 102 citing *Conley*, stating that " ' . . . a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' "

It is clear that defendant's counterclaim meets the requirements of G.S. 1A-1, Rule 8(a)(1). The trial court did not err by dismissing plaintiffs' motion.

[7] Plaintiffs further assign as error the trial judge's order on 6 April 1979 that documents from the file of Mr. Kenneth Goldman, one of defendant's former lawyers, remain under seal. Superior Court Judge William Z. Wood had examined the documents in 1973, *before this action was severed from the reformation action,* and had ruled that the documents were protected from disclosure by the attorney-client privilege. Plaintiffs did not appeal Judge Wood's order, only the trial judge's recognition of it. Plaintiffs' exception is ineffectual. One superior court judge cannot modify, reverse or set aside a judgment of another superior court judge. *In Re Burton*, 257 N.C. 534, 541, 126 S.E. 2d 581 (1962). Judge Mills was bound by Judge Wood's action. plaintiffs excepted to the wrong order.

[8]   Defendant cross-appeals in this case, arguing that the trial court erred by refusing to specifically enforce paragraph 5(c) of the contract. Paragraph 5(c) states that:

> At the time of the rendering of services to Club by Player, Player shall be eligible for and shall receive entitlement to pension benefits from an insurance carrier acceptable to Player at least equal to the following:

> (c) Life insurance in an amount equal to one hundred (100) times the *cash value* of the pension described above *from the date that he ceases to play* professional basketball and *until the date that he commences* drawing retirement. (Emphasis added.)

The trial court was correct in its holding that this section is impossible to perform and cannot be specifically enforced.

It is important to note that "cash value" has a distinct meaning in the insurance industry. The cash value of a pension plan would be an amount quite different from the monthly benefits. If paragraph 5(c) had stated that plaintiffs were obligated to purchase life insurance in an amount equal to one hundred times the monthly benefits ($6,600), paragraph 5(c) could be specifically enforced. Plaintiffs would be obligated to purchase $660,000 worth of life insurance. As the paragraph reads, however, plaintiffs would be tied to a cash value that would range from approximately $360,000 when defendant ceased playing basketball to approximately $910,000 at the time defendant was eligible to draw retirement.

Uncontradicted testimony at trial makes it clear that it is commercially impossible to insure an individual for an amount ranging from $36 million to $91 million. "[A] court of equity will not do a useless thing . . ., specific performance will not, as a rule, be decreed against a defendant who is unable to comply with his contract." *Lawing, supra,* at 537. Furthermore, a court of equity will not often grant specific performance where by doing so it is placed in the position of constantly supervising performance. Such would be the case here because each year between the time defendant ceased to play basketball and the time he became eligible for his pension, the cash value would rise, thus requiring plaintiffs to purchase additional life insurance.

Defendant would have us modify paragraph 5(c) so that plaintiff would be bound to provide life insurance at 100 times the amount of the monthly benefit. This we cannot do. "Equity can only compel the performance of a contract in the precise terms agreed on. It cannot make a new or different contract for the parties simply because the one made by the parties proves ineffectual." (Citation omitted.) *McLean, supra*, at 71.

[9]   Defendant's second argument on its cross-appeal is that the trial court erred when it refused to grant defendant's request for attorney's fees. The trial court did not err.

Defendant bases his claim upon paragraph 8 of the contract which essentially states that:

> The Club agrees to *indemnify* Player, . . . and hold [him] harmless from all liabilities and claims of whatever nature resulting from Player's entering into this Agreement. . . . In addition, the Club will pay *all legal expenses in connection with any and all such claims*, . . . . Player shall have the right to select his own attorney, . . . Which *attorney shall be reasonably approved by the Club*. (Emphasis added.)

Testimony at trial indicates that paragraph 8 applied to expenses defendant might incur in actions involving third parties — not with a party to the contract. Furthermore, the language of paragraph 8 clearly indicates that it only applied to actions involving third parties. Surely plaintiffs would not presume to have the right to approve defendant's lawyers in an adverse action between the two parties. Defendant's assignment of error is without merit.

For the reasons stated above, the decision of the trial court is

Affirmed.

Judges PARKER and MARTIN (Harry C.) concur.