HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

AFFIRMED.

Chief Judge EAGLES and Judge McCULLOUGH concur.

━━━━━━━━━━

HARBORGATE PROPERTY OWNERS ASSOCIATION, INC., Petitioner v. MOUNTAIN LAKE SHORES DEVELOPMENT CORPORATION, First Respondent and DAVIDSON COUNTY, Second Respondent and NEW HARBORGATE CORPORATION, Third Respondent and BLUEBIRD CORPORATION, Fourth Respondent

No. COA00-856

(Filed 7 August 2001)

### 1. Notice— consent judgment recorded in register of deeds— purchaser's notice of restrictions

The trial court did not err by adding respondent-Bluebird Corporation to an action to require specific performance of a consent judgment involving the completion of subdivision amenities where the shareholders in Bluebird were the sole shareholder and corporate secretary of Harborgate, the corporation which purchased the subdivision from the original developer and then transferred it to Bluebird. Although Bluebird argues that it was subjected to the consent judgment without notice or the opportunity to be heard, the consent judgment was analogous to a restrictive covenant, it was recorded in the office of the Register of Deeds, it would have been revealed by a proper search of the public records, and Bluebird is charged with constructive notice of the restrictions contained therein. Moreover, the record is clear that Bluebird was aware of the judgment.

### 2. Specific Performance— subdivision amenities

The trial court did not abuse its discretion by requiring that respondents Harborgate and Bluebird specifically perform the obligations of a consent judgment where Harborgate and Bluebird were successive owners of a subdivision, both corporations had common owners, the consent judgment involved the completion of subdivision amenities, and Harborgate contended that specific performance was impossible. Harborgate voluntarily agreed to be a party to the consent judgment and to specifically perform its obligations, and Bluebird accepted that obligation by accepting the transfer of the subdivision. Moreover, Harborgate

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

and Bluebird failed to establish that specific performance was impossible.

**3. Judgments— performance bond—amount—evidence sufficient**

The trial court did not abuse its discretion by requiring the owners of a subdivision to post a $600,000 performance bond as a part of an order requiring specific performance of a consent judgment to complete subdivision amenities where the amount of the bond was supported by the evidence.

**4. Costs— attorney fees—awarded under consent judgment provision—no statutory authority—invalid**

The trial court erred by granting attorney fees to a home-owner's association pursuant to a provision in a consent judgment entitling the prevailing party to recover reasonable attorney fees in an action to enforce the judgment. Contractual provisions for attorney fees in North Carolina are invalid in the absence of statutory authority and there is no statutory authority permitting recovery.

Judge TYSON concurring in part and dissenting in part.

Appeal by third and fourth respondents from an order entered 4 May 2000 by Judge James R. Vosburgh in Davidson County Superior Court. Heard in the Court of Appeals 25 April 2001.

*Paul Rush Mitchell for petitioner-appellee.*

*Wilson Biesecker Tripp & Sink, by Joe E. Biesecker, for second respondent-appellee.*

*Brooks, Pierce, McLendon, Humphrey & Leonard, L.L.P., by Reid L. Phillips, for third and fourth respondent-appellants; Brinkley Walser, PLLC, by Gaither S. Walser, for first and fourth respondent-appellants.*

HUNTER, Judge.

New Harborgate Corporation ("Harborgate") and Bluebird Corporation ("Bluebird") appeal from an order adding Bluebird as a party to the action, and requiring both parties and Mountain Lake Shores Development Corporation ("Mountain Lake") to (1) specifically perform the obligations imposed by a Consent Judgment entered on 2 June 1998, (2) post security for the performance of said

292 IN THE COURT OF APPEALS

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

obligations, and (3) reimburse Harborgate Property Owners Association, Inc. ("the Association") for attorney fees. On appeal, Harborgate and Bluebird assign error to the entirety of the trial court's order. After a careful review of the record, briefs, and arguments of counsel, we affirm the trial court's order, except the award of attorney fees which is hereby vacated.

This case centers around the property known as the Harborgate residential subdivision ("subdivision"), consisting of approximately 150 acres located in Davidson County, North Carolina. In fact, this particular subdivision has been the subject of much controversy. Particularly, this subdivision was at the heart of an appeal previously heard by this Court, *Harborgate Prop. Owners Ass'n v. Mt. Lake Shores Dev. Corp.*, 133 N.C. App. 347, 521 S.E.2d 151 (unpublished), *disc. review denied*, 351 N.C. 103, 540 S.E.2d 359 (1999) (holding that James and LaVerne Tumlin could not intervene, because their interests were adequately represented by the Association); additionally, this subdivision has been involved in litigation between Tony Susi ("Susi") and Lois Aubin ("Aubin"); and two separate temporary restraining orders have been obtained prohibiting the transfer of the subdivision. Significantly, these restraining orders, which prevented Harborgate from obtaining loans to finance construction within the subdivision, are now both dissolved.

The facts relevant to the appeal presently before us are: in 1996, the Association filed a complaint against Mountain Lake, the original developer of the subdivision, seeking a declaration of its rights and specific performance of the completion of several amenities and common areas within the subdivision—including, *inter alia*, a security gate, tennis courts, swimming pool, and club house. On 2 June 1998, Judge L. Todd Burke entered a Consent Judgment whereby Mountain Lake and the Association agreed to a schedule for the completion of the amenities and common areas. Additionally, the Consent Judgment provided that all subsequent purchasers/developers of the subdivision would be bound by the terms and conditions of the judgment, such parties would be added as a party to the action, the judgment would be enforceable through a motion in the cause, and in the necessity of a motion in the cause, attorney fees would be taxed to the non-prevailing party. The Consent Judgment was recorded in the office of the Register of Deeds of Davidson County.

Thereafter, Susi and Aubin entered into negotiations with Mountain Lake for the purchase of the subdivision. Eventually, Mountain Lake sold its rights in the subdivision to the Susi

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

Corporation, which later changed its name to New Harborgate. Susi was the President and sole shareholder of the Susi Corporation, and Aubin was the corporation's Secretary. Another corporation involved during the negotiations for the subdivision was Bluebird; notably, Susi and Aubin were also the sole shareholders (fifty percent each) and officers of Bluebird. During the negotiations, the Association claims that it believed that the Susi Corporation was actually Bluebird under a new name. On 8 March 1999, Judge Mark E. Klass entered a Modification of Consent Judgment, whereby the Susi Corporation (Harborgate) consented to being added as a party to the action and to be bound by the Consent Judgment.

Nevertheless, Harborgate failed to meet the completion dates for the amenities and common areas specified in the Consent Judgment. As a result, the Association filed a motion in the cause seeking (1) to set aside the Modification of Consent Judgment as having been obtained by fraud or mistake, and (2) specific performance of the Consent Judgment by Mountain Lake and Harborgate. Then, on 30 April 2000, Harborgate transferred all of its interest in the subdivision to Bluebird by warranty deed. The deed was recorded in the office of the Register of Deeds of Davidson County on the morning of 1 May 2000.

Shortly after the deed was recorded on 1 May 2000, the hearing on the Association's motion in the cause was held before Judge James R. Vosburgh. By order entered 4 May 2000, Judge Vosburgh ordered Bluebird to be added as a party to the action, and required Harborgate, Bluebird, and Mountain Lake to specifically perform the obligations set out in the Consent Judgment, post security in the amount of $600,000.00 for the performance of said obligations, and reimburse the Association for reasonable attorney fees in the amount of $11,350.00. Harborgate and Bluebird appeal from this order.

[1] First, Bluebird assigns error to the trial court's addition of Bluebird as a party to the action and subjection of the corporation to the Consent Judgment. Specifically, Bluebird argues that the order was entered without it being afforded notice or the opportunity to be heard. We disagree.

In a land transaction, " '[a] purchaser is charged with notice of the contents of each recorded instrument constituting a link in [the] chain of title and is put on notice of any fact or circumstance affecting [the] title which any such instrument would reasonably disclose.' " *Randle v. Grady*, 224 N.C. 651, 656, 32 S.E.2d 20, 22 (1944)

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

(quoting Headnote 7, *Turner v. Glenn*, 220 N.C. 620, 18 S.E.2d 197 (1942)). In other words, a "purchaser [of real property] . . . has constructive notice of all duly recorded documents that a proper examination of the title should reveal." *Stegall v. Robinson*, 81 N.C. App. 617, 619, 344 S.E.2d 803, 804 (1986).

Here, the Consent Judgment, which was recorded in the office of the Register of Deeds of Davidson County,

> serve[d] as the Court's interpretation of the declarations as if the same had been included in the Restrictive Covenants and [was] impressed upon the real property described [in the Consent Judgment] together with the covenants and responsibilities set forth [t]herein, the same to run with the real property and be an appurtenance thereto in the same manner as part of the recorded Restrictive Covenants and plats which are recorded in the Register of Deeds of Davidson County, with the same effect of dedicating and placing these rights and responsibilities upon the real property of Harborgate subdivision.

Where a restrictive covenant agreement is on record, purchasers of land are charged with constructive notice of restrictions contained in the agreement. *See Higdon v. Jaffa*, 231 N.C. 242, 248, 56 S.E.2d 661, 665 (1949); *see also Turner*, 220 N.C. 620, 625, 18 S.E.2d 197, 202.

In the instant case, the Consent Judgment is analogous to a restrictive covenant, and therefore is a link in the chain of title. A proper search of the public records pertaining to the subdivision would have revealed the Consent Judgment. Consequently, Bluebird is charged with constructive notice of the restrictions contained therein.

While a better course of action would have been to provide notice directly to Bluebird, the record is clear that Bluebird was aware of the Consent Judgment. Evidence of record reveals that both Susi and Aubin signed the Modified Consent Judgment on 8 March 1999. Additionally, Susi, his counsel, Aubin, and her counsel were present for the hearing on the Association's motion in the cause. While Susi's counsel agreed that Bluebird should be added as a party in the matter, Aubin's counsel did not object when the subject of Bluebird's addition was raised. Accordingly, the trial court did not err in adding Bluebird as a party to the action and subjecting it to the Consent Judgment.

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

**[2]** Next, Harborgate and Bluebird assign error to the trial court's requirement that they specifically perform the obligations imposed by the Consent Judgment—particularly, the completion of the amenities and common areas within the subdivision. However, we find no merit to this assignment.

In dealing with the equitable remedy of specific performance,

[t]he sole function of the . . . remedy . . . is to compel a party to do that which in good conscience he ought to do without court compulsion. The remedy rests in the sound discretion of the trial court; and is conclusive on appeal absent a showing of a palpable abuse of discretion.

*Munchak Corp. v. Caldwell*, 46 N.C. App. 414, 418, 265 S.E.2d 654, 657 (1980), *modified on other grounds*, 301 N.C. 689, 273 S.E.2d 281 (1981) (citations omitted).

"[S]pecific performance may not be granted where the performance of the contract is impossible." *Hong v. George Goodyear Co.*, 63 N.C. App. 741, 743, 306 S.E.2d 157, 159 (1983). Moreover, "specific performance will not be decreed against a defendant who is unable to comply with the contract even though the inability to perform is caused by the defendant's own act." *Id.* at 744, 306 S.E.2d at 159. However, "where a defendant makes the claim that the specific performance would be inequitable as respects him, it is incumbent on him to establish that fact." 71 Am. Jur. 2d *Specific Performance* § 207 (1973).

At bar, Harborgate contends that it presented evidence that it was impossible for it to specifically perform the obligations in the Consent Judgment. Therefore, Harborgate and Bluebird, relying on our Supreme Court's decision in *Cavenaugh v. Cavenaugh*, 317 N.C. 652, 347 S.E.2d 19 (1986), assert that having,

offered evidence tending to show that [they are] unable to fulfill [the] obligations under a separation agreement or *other contract* the trial judge must make findings of fact concerning the defendant's ability to carry out the terms of the agreement before ordering specific performance. . . .

*Id.* at 657, 347 S.E.2d at 23 (emphasis added). However, we are not persuaded by this argument. *Cavenaugh* deals solely with specific performance in respect to a separation agreement. Our Supreme

296        IN THE COURT OF APPEALS

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

Court has found that a separation agreement differs from a commercial, arms-length transaction. *See Bromhal v. Stott*, 341 N.C. 702, 706, 462 S.E.2d 219, 222 (1995). Therefore, *Cavenaugh* does not apply to the case *sub judice*.

Thus, we are left to determine whether Harborgate, or Bluebird, established that specific performance was impossible here. First, we note that Harborgate voluntarily agreed to be a party to the Consent Judgment and to specifically perform the obligations therein. Likewise, Bluebird, by accepting the transfer of the subdivision, accepted the obligation to specifically perform. Secondly, Harborgate and Bluebird both failed to establish that specific performance was impossible on their parts. The only evidence of impossibility offered by Harborgate was the fact that it had $7,600.00 in its bank account and several banks had declined to extend it a loan for the subdivision. Moreover, Bluebird offered no evidence whatsoever that it was impossible for the corporation to specifically perform.

On the other hand, evidence was presented that showed it was actually financially feasible for both Harborgate and Bluebird to specifically perform the obligations under the Consent Judgment. For instance, when Susi was asked, "[d]oes [] Harborgate itself have sufficient money in the bank account to build these amenities," he responded, "[y]es, we have." In addition to Susi's admission, counsel for Harborgate and Bluebird admitted during oral arguments before this Court that there was now nothing prohibiting the parties from using the subdivision as security for a loan. Thus, we find that Harborgate and Bluebird failed to establish that it was impossible for the corporations to specifically perform. Accordingly, we hold that the trial court did not abuse its discretion in ordering both parties to specifically perform the obligations set forth in the Consent Judgment—i.e., completion of the amenities and common areas within the subdivision.

[3] Harborgate and Bluebird next assign error to the trial court's requirement that they post a $600,000.00 performance bond. Specifically, both parties contend that the amount is not supported by the evidence. We disagree.

"[A] court of equity may adopt all necessary, reasonable, and lawful means to make its decrees fully effective, and to accomplish the objects intended." 71 Am. Jr. 2d *Specific Performance* § 210 (1973). Furthermore, in a specific performance action, "[t]o assure performance, it is not unusual to require a performance bond . . . ." *Bell v.*

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

*Concrete Products, Inc.*, 263 N.C. 389, 390, 139 S.E. 629, 630 (1965); *see also* 5A Arthur L. Corbin, *Corbin on Contracts* § 1137 (1964) ("[i]t may be proper for the [court] . . . to require the defendant to give security to prevent future injury").

At the hearing, Harry Winchester ("Winchester"), the Association's president, testified that Susi stated it would take approximately $1,200,000.00 to develop the amenities and common areas. Winchester further testified that to complete the club house alone would cost approximately $400,000.00 to $450,000.00. Additionally, Jeffrey Todd Yates, a general contractor employed by Susi, testified that an estimate for completing the tennis courts, swimming pool, and club house, but excluding the security gate, would be $400,000.00 to $500,000.00. Conversely, Susi testified that his estimate to complete the amenities was approximately $300,000.00 to $400,000.00. At bar, we find that the requirement of a performance bond in the amount of $600,000.00 is supported by the evidence. Hence, we hold that to assure performance, it was not an abuse of discretion for the trial court to order a bond in that amount.

**[4]** Finally, Harborgate and Bluebird assign error to the trial court's award of attorney fees to the Association pursuant to the Consent Judgment. After review, we vacate those provisions in the trial court's order awarding attorney fees.

Ordinarily, "[a] consent judgment is the contract between the parties entered upon the records with the approval and sanction of the court. It is construed as any other contract." *Redevelopment Comm. v. Hannaford*, 29 N.C. App. 1, 2-3, 222 S.E.2d 752, 753 (1976). In the Consent Judgment *sub judice*, the parties agreed that "[i]n the event any action is brought by either party to enforce this Judgment, the prevailing party or parties in said action shall be entitled to recover reasonable attorney fees from the non-prevailing party for its representation in said subsequent proceedings."

In North Carolina, " '[a]s a general rule[,] contractual provisions for attorney's fees are invalid in the absence of statutory authority. This is a principle that has long been settled in North Carolina and fully reviewed by our Supreme Court . . . .' " *Delta Env. Consultants of N.C. v. Wysong & Miles Co.*, 132 N.C. App. 160, 167, 510 S.E.2d 690, 695, *disc. review denied and dismissed*, 350 N.C. 379, 536 S.E.2d 70 (1999) (quoting *Forsyth Municipal ABC Board v. Folds*, 117 N.C.

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

App. 232, 238, 450 S.E.2d 498, 502 (1994)); *see also Lee Cycle Ctr., Inc. v. Wilson Cycle Ctr., Inc.*, 143 N.C. App. 1, 11, 545 S.E.2d 745, 752 (2001). Moreover, " 'the general rule has long obtained that a successful litigant may not recover attorneys' fees, whether as costs or as an item of damages, unless such a recovery is expressly authorized by statute.' " *Delta Env. Consultants*, 132 N.C. App. at 167, 510 S.E.2d at 695 (quoting *Enterprises, Inc. v. Equipment Co.*, 300 N.C. 286, 289, 266 S.E.2d 812, 814 (1980)).

Here, we can find no statutory authority permitting the Association to recover attorney fees. Additionally, we find that the attorney fees at issue are not allowable as costs under N.C. Gen. Stat. § 7A-305(d)(3) (1999) ("[c]ounsel fees, as provided by law") or N.C. Gen. Stat. § 6-20 (1999) (costs allowable "in the discretion of the court"). Moreover, no debt arises from the Consent Judgment, other than the payment of attorney fees from the non-prevailing party, thus the fees are not allowable as an "evidence of indebtedness" under N.C. Gen. Stat. § 6-21.2 (1999). Accordingly, we vacate the trial court's award of attorney fees.

In a recent decision, *Lee Cycle*, 143 N.C. App. 1, 545 S.E.2d 745 (appeal pending in the Supreme Court of North Carolina, No. 271A01), this Court, by a divided panel, reversed a trial court's award of attorney fees due to a lack of statutory authority—despite an express contractual provision allowing such fees. We recognize and appreciate the precedents cited and arguments made by Judge Tyson in his dissents in *Lee Cycle*, 143 N.C. App. at 13-16, 545 S.E.2d at 752-54, and in the case at bar; however, "where one panel of this Court has decided an issue, a subsequent panel is bound by that precedent . . . unless it has been overturned by a higher court." *Heatherly v. Industrial Health Council*, 130 N.C. App. 616, 621, 504 S.E.2d 102, 106 (1998). Thus, we are bound by the precedents in this matter, and only our Supreme Court or legislature can change them if they are so inclined.

In sum, we affirm the trial court's order, except the award of attorney fees which is hereby vacated.

Affirmed in part, and vacated in part.

Judge WALKER concurs.

Judge TYSON dissents in a separate opinion.

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

TYSON, Judge, concurring in part, dissenting in part.

I concur in the majority's opinion on all issues other than the trial court's award of attorney's fees being vacated.

I disagree with the majority's conclusion that petitioners are not entitled to recover attorney's fees under either G.S. § 6-21.2 or G.S. § 6-20. Accordingly, I respectfully dissent from that part of the majority's opinion.

### A. "Other Evidence of Indebtedness"

G.S. § 6-21.2 provides:

> Obligations to pay attorneys' fees upon any note, conditional sale contract or other evidence of indebtedness . . . shall be valid and enforceable, and collectible as part of such debt, if such note, contract or other evidence of indebtedness be collected by or through an attorney at law after maturity. . . .

N.C. Gen. Stat. § 6-21.2 (1999) (emphasis supplied). The majority's opinion concludes that G.S. § 6-21.2 does not provide statutory authority for the court's award of attorney's fees because "no debt arises from the Consent Judgment, other than the payment of attorney fees from the non-prevailing party, thus the fees are not allowable as an 'evidence of indebtedness.' "

The phrase "other evidence of indebtedness" has been defined by our Supreme Court to include "any printed or written instrument, signed or otherwise executed by the obligor(s), which evidences on its face a legally enforceable obligation to pay money." *Stillwell Enterprises, Inc. v. Interstate Equipment Co.*, 300 N.C. 286, 294, 266 S.E.2d 812, 817 (1980). The Supreme Court stated that such a definition "does no violence to any of the statute's specific provisions and accords well with its general purpose to validate a debt collection remedy expressly agreed upon by contracting parties." *Id.* at 294, 266 S.E.2d 817-18 (emphasis supplied).

In *Stillwell*, the Supreme Court reversed this Court's holding that G.S. § 6-21.2 was inapplicable, and that an award of attorney's fees arising out of a lease dispute was improper. *Id.* at 295, 266 S.E.2d at 818. The Court noted that the lease agreement at issue contained a legally enforceable obligation by the plaintiff-lessee to remit rental payments to the defendant-lessor in exchange for use of property. *Id.*

HARBORGATE PROP. OWNERS ASS'N v. MOUNTAIN LAKE SHORES DEV. CORP.

[145 N.C. App. 290 (2001)]

at 294, 266 S.E.2d at 818. Holding that such an agreement "is obviously an 'evidence of indebtedness,' " the Court held: "we see no reason why the obligation by plaintiff to pay attorneys' fees incurred by defendant <u>upon collection of the debts arising from the contract itself</u> should not be enforced to the extent allowed by G.S. § 6-21.2." *Id.* at 294-95, 266 S.E.2d at 818 (emphasis supplied).

The majority opinion correctly notes that "[a] consent judgment is the contract between the parties entered upon the records with the approval and sanction of the court. It is construed as any other contract." *Redevelopment Comm. v. Hannaford*, 29 N.C. App. 1, 2-3, 222 S.E.2d 752, 753 (1976). In the Consent Judgment *sub judice*, the parties agreed that "[i]n the event any action is brought by either party to enforce this Judgment, the prevailing party or parties in said action shall be entitled to recover reasonable attorney fees from the non-prevailing party for its representation in said subsequent proceedings."

The $600,000 awarded petitioners by the trial court is "evidence of indebtedness." The court provided respondents with the option of securing this debt by posting a performance bond or by providing petitioners a first lien deed of trust on property owned by respondents.

It is undisputed that petitioners' action before us is a motion in the cause within the original action that ended with the consent judgment that imposed legally enforceable monetary obligations on respondents. When the consent judgment was entered, the obligation of respondents matured. It is also undisputed the petitioners prevailed in enforcing and collecting upon the matured obligations contained in the consent judgment. Thus, consistent with the Supreme Court's holding in *Stillwell*, G.S. § 6-21.2 provides authority for petitioners to recover the attorney's fees "<u>upon collection of the debts arising from the contract itself</u>." *Stillwell* at 294-95, 266 S.E.2d at 818 (emphasis supplied). I would hold that the trial court had statutory authority under G.S. § 6-21.2 to award attorney's fees.

### B. Fees as Costs in Equitable Relief

The trial court's award of attorney's fees is also authorized by G.S. § 6-20. G.S. § 6-20 provides that, "[i]n other actions, costs may be allowed or not, in the discretion of the court, unless otherwise provided by law." N.C. Gen. Stat. § 6-20 (1999). A trial court may, in

its discretion, award attorney's fees under G.S. § 6-20 if "just and equitable." *Batcheldor v. Boyd*, 119 N.C. App. 204, 208, 458 S.E.2d 1, 3-4, *disc. review denied*, 341 N.C. 418, 461 S.E.2d 753 (1995) (citing *Wachovia Bank & Trust Co. v. Dodson*, 260 N.C. 22, 131 S.E.2d 875 (1963)); *see also, Alsup v. Pitman*, 98 N.C. App. 389, 390, 390 S.E.2d 750, 751 (1990) (recoverable costs under G.S. § 6-20 may, in trial court's discretion, include expenses for depositions even though deposition expenses do not appear expressly in the statutes).

In suits in equity, the allowance of costs rests in the discretion of the court. *Worthy v. Brower*, 93 N.C. 492, 1885 WL 1714, (N.C.) (1885). Under G.S. § 6-20, the trial court's allowance of costs, including attorney's fees, is within the court's sound discretion and "will not be disturbed on appeal absent an abuse of discretion." *Wachovia Bank of North Carolina, N.A. v. Bob Dunn Jaguar, Inc.*, 117 N.C. App. 165, 175, 450 S.E.2d 527, 533 (1994) (citation omitted).

In this case, petitioners filed a motion in the cause seeking the following equitable remedies: (1) to set aside the modification of consent judgment as having been obtained by fraud or mistake, and (2) specific performance of the consent judgment by Mountain Lake and Harborgate. The trial court ordered "specific performance compelling [all] respondents to take such actions as will bring about the completion of the obligations imposed by the Consent Judgment as modified." The court also ordered "[r]espondents to provide security for the performance of the obligations compelled by this Order in the amount of $600,000." The remedy sought and the court's relief is equitable in nature. Thus, under G.S. § 6-20, the trial court had discretion to award petitioners' costs, including attorney's fees. Respondents present no evidence of an abuse of discretion in the trial court's award.

I would affirm the learned trial court's award of attorney's fees under either G.S. § 6-21.2 or G.S. § 6-20. I, therefore, respectfully dissent from that portion of the majority's opinion.