Kezeli v. Logan, 2015 NCBC 29.

STATE OF NORTH CAROLINA

COUNTY OF WAKE

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
12 CVS 12925

ANDREW KEZELI, Individually and
Derivatively as minority member of TAS
PROFESSIONAL, LLC, a North Carolina
Limited Liability Company and TRADE
ANGLE STRATEGIES, LLC, a North
Carolina Limited Liability Company,
               Plaintiff

              v.

JOHN V. LOGAN, EDMUNDAS KATINAS,
TAS PROFESSIONAL, LLC, a North
Carolina Limited Liability Company and
TRADE ANGLE STRATEGIES, LLC, a
North Carolina Limited Liability Company,
               Defendants

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

**OPINION AND ORDER**

THIS CAUSE, designated a mandatory complex business case by Order of the Chief Justice of the North Carolina Supreme Court pursuant to N.C. Gen. Stat. § 7A-45.4(b) (hereinafter, references to the North Carolina General Statutes will be to "G.S."), and assigned to the undersigned Special Superior Court Judge for Complex Business Cases, comes before the Court upon Plaintiff's Motion for Partial Summary Judgment ("the Summary Judgment Motion"), pursuant to Rule 56 of the North Carolina Rules of Civil Procedure ("Rule(s)"). The Court held a hearing on the Summary Judgment Motion on February 10, 2015.

THE COURT, after reviewing the Summary Judgment Motion, briefs in support of and in opposition to the Summary Judgment Motion, the sworn affidavits, pleadings and deposition testimony, the arguments of counsel, and other appropriate matters of record, CONCLUDES that the Summary Judgment Motion should be GRANTED, in part, and DENIED, in part, for the reasons stated herein.

*Brooks, Pierce, McLendon, Humphrey & Leonard LLP, by D.J. O'Brien, III, Esq. for Plaintiff.*

*Hinson Faulk, P.A., by Mark Hinson, Esq. for Defendants.*

McGuire, Judge.

<u>PROCEDURAL HISTORY</u>

1.      On September 13, 2012, Plaintiff Andrew Kezeli initiated this lawsuit by filing his Complaint. In the Complaint, Plaintiff pleads the following Claims for Relief ("Claim(s)"): First Claim for Relief (Declaratory Judgment); Second Claim for Relief (Accounting and Inspection of Corporate Records – TAS); Third Claim for Relief (Accounting and Inspection of Corporate Records – TAS Pro); Fourth Claim for Relief (Breaches of Operating Agreements); Fifth Claim for Relief (Dissolution/Frustration of Minority Shareholder Expectations); Sixth Claim for Relief (Derivative and Individual Action for Breach of Fiduciary Duties); Seventh Claim for Relief (Derivative and Individual Action for Breach of Duty of Good Faith and Duty of Loyalty and Due Care); and Eighth Claim for Relief (Unfair and Deceptive Trade Practices).

2.      On December 10, 2012, Defendants John V. Logan, TAS Professional, LLC, and Trade Angle Strategies, LLC filed their Verified Answer and Defenses to Plaintiff's Complaint.[1]

3.      On June 7, 2013, Defendant Edmundas Katinas filed a responsive pleading titled Motion to Dismiss, Verified Answer and Defenses to Complaint.[2]

---

[1] Verified Answer and Defenses to Complaint ("Logan Answer").

[2] Defendant Katinas' Motion to Dismiss, Verified Answer and Defenses to Complaint ("Katinas Answer"). Though the Katinas Answer has a verification page attached at the end, the Court has been unable to confirm that Katinas ever signed a filed copy of his Answer. Accordingly, the Court treats the Katinas Answer as "unverified" for purposes of this Opinion. However, the Katinas Answer largely mirrors the Logan Answer, which has been verified.  Katinas has never brought the Motion to Dismiss contained in the responsive pleading before the Court for resolution.

4.     On January 23, 2014, Plaintiff filed his Motion for Partial Summary Judgment. The Summary Judgment Motion seeks summary judgment only as to Plaintiff's first four Claims.[3] Defendants filed a Memorandum in Opposition to the Summary Judgment Motion.

5.     The Summary Judgment Motion has been briefed and argued and is ripe for determination.

## FACTUAL BACKGROUND

The Court considers the following facts in reaching its conclusion.[4]

6.     Defendants Trade Angle Strategies, LLC ("TAS") and TAS Professional, LLC ("TAS Pro") are North Carolina limited liability companies.[5]  Plaintiff Andrew Kezeli ("Kezeli") is a member and manager of TAS and TAS Pro.[6]   Defendants John V. Logan ("Logan") and Edmundas Katinas ("Katinas") also are members and managers of TAS and TAS Pro, and Logan is the Chief Executive Officer ("CEO") of both companies.[7] TAS and TAS Pro are involved in developing, marketing and selling financial trading tools and related services to retail and institutional investors.

---

[3] In the Complaint, Kezeli purports to bring claims both "individually and derivatively as a minority member of both Trade Angle Strategies, LLC, and TAS Professional, LLC." Compl. at p 1. The Complaint, however, labels only the Sixth and Seventh Claims for Relief as being alleged both individually and derivatively.  At the hearing Plaintiff stated he seeks summary judgment only as to his individual claims, and not as to any derivative claims.

[4] A court does not make findings of fact in ruling upon a motion for summary judgment. However, the court may summarize material facts that do not appear to be at issue and which justify the judgment. *Hyde Ins. Agency, Inc. v. Dixie Leasing Corp.*, 26 N.C. App. 138, 142 (1975). Here, Kezeli has adopted the majority of the allegations in his Complaint in his Affidavit ("except as to those matters set forth therein upon information and belief"), and Logan has verified his Answer. The Court may therefore treat the pleadings, to the extent that they have been adopted or verified by the parties, as affidavits for purposes of ruling on summary judgment. *See, e.g.*, *Schoolfield v. Collins*, 281 N.C. 604, 612 (1972) ("To the extent that a verified pleading meets [the requirements of Rule 56(e)] then it may properly be considered as equivalent to a supporting or opposing affidavit, as the case may be." (quoting 6 Moore's Federal Practice, par. 56.11[3], at 2176 (2d ed. 1965)) (alterations in original)).

[5] Compl. ¶¶ 4, 5; Logan Ans. ¶¶ 4, 5; Katinas Ans. ¶¶ 4, 5.

[6] Compl. ¶ 6; Logan Ans. ¶ 6; Katinas Ans. ¶ 6.

[7] Compl. ¶¶ 7-8; Logan Ans. ¶¶ 7-8; Katinas Ans. ¶¶ 7-8.

7.      Logan and Katinas formed TAS in March 2005.  Kezeli began performing work for TAS in or around February 2007.[8]  In April 2009, Logan and Katinas made Kezeli a member of TAS.[9]  Kezeli originally was given a 20% ownership interest in TAS, but claims that his interest subsequently increased to 45% through his purchase of another member's interest.[10]  Logan and Katinas dispute that Kezeli owns 45%.[11]  Logan and Katinas each own a 25% interest in TAS. The remaining shares are held by individuals who are not parties to this litigation.[12]  Five individuals, including Kezeli, Logan, and Katinas, are managers of TAS.[13]  TAS has adopted a written Operating Agreement.

8.      Section 9.1 of the TAS Operating Agreement provides, in pertinent part, that:

> The books and records and profits and losses of the Company shall be determined in accordance with generally accepted accounting principles applied on a consistent basis. The books and records shall be available upon reasonable notice for inspection by any Member or its designated representatives during reasonable business hours for any purpose reasonably related to its Interest. Each Member may make a reasonable number of copies or extracts of the books and records at its expense. The Company's accounting period for tax and non-tax purposes shall be the Fiscal Year. At a minimum the Company shall keep at its principal place of business the records and documents required by the [North Carolina Limited Liability Company Act].[14]

9.      The TAS Operating Agreement does not expressly state what specific "books and records" are to be maintained by the company, nor does it provide members with the right to demand an accounting.

---

[8] Compl. ¶¶ 15-16; Logan Ans. ¶¶ 15-16; Katinas Ans. ¶¶ 15-16.
[9] Compl. ¶ 23; Logan Ans. ¶ 23; Katinas Ans. ¶ 23.
[10] Compl. ¶¶ 24, 36.
[11] Logan Ans. ¶ 36; Katinas Ans. ¶ 36.
[12] Kezeli Aff. Ex. A ("TAS Operating Agreement"); Compl. ¶ 36; Logan Ans. ¶ 36; Katinas Ans. ¶ 36.
[13] TAS Operating Agreement at § 5.2(a).
[14] TAS Operating Agreement at § 9.1.

10. On September 13, 2010, Kezeli, Logan, and Katinas formed TAS Pro, and all three are members and managers.[15] Kezeli, Logan, and Katinas each own 28.6% of TAS Pro.[16]

11. TAS Pro has also adopted a written Operating Agreement. In pertinent part, the TAS Pro Operating Agreement provides that "[t]he Company shall maintain adequate accounting records reflecting, among other things, each Member's capital account. All books, records and accounts shall be open at all times to inspection by each of the Members."[17] The TAS Pro Operating Agreement does not expressly state what specific "books, records and accounts" are to be maintained by the company, nor provide members with the right to demand an accounting.

12. Logan admitted that TAS and TAS Pro have not maintained many of the financial records typically kept by an LLC. TAS and TAS Pro did not maintain "income statements, balance sheets, cash flow statements, bank reconciliations or check registers." [18] Logan also admitted that neither company has engaged accountants since 2008.[19]

13. Beginning in February 2012, Kezeli made requests to Logan to inspect TAS and TAS Pro financial and business records.[20] On March 23, 2012, Kezeli's attorney wrote a letter ("the Demand Letter") to Logan that reiterated Kezeli's request "to inspect all of the books, records and accounts of the TAS Companies." The Demand Letter stated that "[t]he purpose of this demand is to ascertain the value of Mr. Kezeli's interest in [TAS and TAS Pro] and to confirm whether [TAS and TAS Pro] have been managed in a lawful and legal manner."[21] The Demand Letter cited to the TAS Operating Agreement, the TAS Pro

[15] Compl. ¶ 51; Logan Ans. ¶ 51; Katinas Ans. ¶ 51; Kezeli Aff. Ex. B ("Tas Pro Operating Agreement") at 1.
[16] TAS Pro Operating Agreement at 6.
[17] TAS Pro Operating Agreement at 4.
[18] Logan Aff. at ¶ 5.
[19] *Id.*
[20] Compl. ¶¶ 77-78; Kezeli Ans. ¶¶ 77-78; Logan Ans. ¶¶ 77-78.
[21] Logan Aff. Ex. C ("Demand Letter").

Operating Agreement, and N.C. Gen. Stat. § 57C-3-04[22] as authority for Kezeli's "inspection rights." Finally, the Demand Letter concluded by "reiterat[ing] the demand for an inspection and access to all of the books and records of [TAS, TAS Pro, and related companies]" and demanding, in addition to the documents enumerated in N.C. Gen. Stat. § 57C-3-04, access to "all 1065 Partnership Tax returns and state tax filings . . . , income statements, balance sheets, cash flow statements, bank reconciliations, bank statements for all bank accounts, check registers and all cash/deposit receipts from 2008 to the present."[23]

14. Logan responded to the Demand Letter via e-mail stating that "TAS and TAS Pro need[] time to produce the requested records."[24] Katinas also responded to the Demand Letter via e-mail, but apparently did not provide the requested records.[25]

15. In an affidavit dated May 27, 2014, Logan represented to the Court that TAS and TAS Pro had "provided [to Kezeli] copies of or access to all known books and records of the Companies including expense reports and bank statements through February 2014 detailing every transaction into and out of the Companies," but that, because TAS and TAS Pro had not engaged an accountant after 2008, "many of the other specific records requested in Mr. Kezeli's letter simply do not exist."[26] At the hearing on the Summary Judgment Motion, counsel for Defendants represented to the Court that Defendants had recently provided Kezeli with certain additional records and documents in response to the Demand Letter. Kezeli maintains that he still has not been provided "meaningful financial information concerning" TAS and TAS Pro.[27]

---

[22] Because this proceeding was commenced prior to the effective date of Chapter 57D, the current North Carolina Limited Liability Company Act, the Court applies the old Act ("57C") to its analysis. G.S. § 57D-11-03(b).
[23] Demand Letter at 2.
[24] Logan Ans. ¶¶ 79-80; Katinas Ans. ¶¶ 79-80.
[25] *Id.*
[26] Logan Aff. ¶¶ 4-5.
[27] Kezeli Aff. ¶ 10.

DISCUSSION

16.     Kezeli moves for summary judgment on his first four Claims for Relief for declaratory judgment, accounting and inspection of records as to both TAS and TAS Pro, and breach of operating agreements. The Court will address each Claim in turn.

17.     "Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (quoting Rule 56(c)). Any inference of fact should be drawn against the movant. *Forbis v. Neal*, 361 N.C. 519, 523-524 (2007) (citing *Caldwell v. Deese*, 288 N.C. 375, 378 (1975)). A genuine issue of material fact will require the court to preserve the issue for a finder of fact. *Bumpers v. Cmty. Bank of N. Va*, 367 N.C. 81 (2013).  Although the Court must view the record "in the light most favorable to the party opposing the motion," Rule 56(e) provides that summary judgment may not be defeated by "mere allegations or denials," but rather that the opposition must be supported by "specific facts showing that there is a genuine issue for trial." *Patterson v. Reid*, 10 N.C. App. 22, 28 (1970).

### Declaratory Judgment

18.     Kezeli's First Claim for Relief seeks a declaratory judgment.  North Carolina provides statutory right to seek a declaratory judgment from its Courts regarding "rights, status and other legal relations."  G.S. § 1-253.  Although it is not clear exactly what Kezeli seeks to have this Court declare, the First Claim for Relief appears to contains four allegations: (1) that Logan and Katinas made unauthorized distributions of company funds to themselves or third parties, in violation of the TAS and TAS Pro Operating Agreements; (2) that the parties disagree on the extent of Kezeli's ownership interest in TAS; (3) that Kezeli has made a proper demand on Defendants for an accounting of all TAS and TAS Pro

finances and distribution to Kezeli of his "fair share of the profits," and that Defendants have failed to comply with this demand; and (4) that the parties are in dispute as to the "interpretation and enforceability of the pertinent terms" of the TAS and TAS Pro Operating Agreements.

19. Kezeli does not address in his Brief, nor does he direct the Court to any evidence of, inappropriate distribution of TAS or TAS Pro funds by Logan and Katinas. In fact, Logan explicitly denies this allegation in his verified Answer.[28] Summary judgment on Kezeli's claim for declaratory relief on this issue is therefore not appropriate and should be DENIED.

20. Similarly, Kezeli has not provided the Court with any evidence from which it could determine that Kezeli owns a greater than 20% share of TAS. In his verified Answer, Logan denies that Kezeli owns a 45% interest and that states that Plaintiff "overstates the value of his ownership interest in TAS."[29] Accordingly, there are disputed facts regarding Kezeli's ownership interest in TAS, and summary judgment for declaratory relief on this issued should be DENIED.

21. It is not apparent from the allegations in the Complaint what the dispute over the "interpretation and enforceability of the pertinent terms" refers to, and Kezeli does not address this conflict in his brief. Nevertheless, assuming that this allegation refers, at least in part, to Kezeli's demands for inspection of records and an accounting under the Operating Agreements or statute, the Court addresses these disputes below.

22. Kezeli also apparently seeks a declaration that he has made a "proper demand" on Defendants for an accounting of TAS and TAS Pro finances and to distribute to Kezeli his "fair share" of profits. In his Memorandum in Support, Kezeli contends that "[t]here is no

---

[28] *See, e.g.*, Logan Ans. ¶¶ 74, 87; Katinas Ans. ¶¶ 74, 87.
[29] Logan Ans. ¶ 93; Katinas Ans. ¶ 93.

factual dispute as to: Kezeli's right to an accounting of the Companies' finances; Kezeli's repeated demands for the same; and Defendants' failure to provide him with an accounting."[30] In their Answers, Logan and Katinas have denied that Kezeli's allegation that he made "repeated requests" for a "proper accounting."[31] In his affidavit, however, Logan admitted that Kezeli has "demanded a forensic account[ing]" to be paid for by the companies.[32] Accordingly, it is not entirely clear that the facts regarding the demand for an accounting are not in dispute, such that summary judgment would be appropriate.

23.     Even assuming that the facts regarding Kezeli's demand for an accounting are not in dispute, Kezeli has not pointed to any authority that would require TAS and TAS Pro to provide him with an accounting.  The TAS and TAS Pro Operating Agreements do not provide members with a right to demand an accounting, nor do they require the companies to perform an accounting.  In addition, 57C provides no such statutory authority for a member to demand an accounting.[33] Accordingly, to the extent Kezeli requests a declaration that he made a "proper demand" for an accounting or that he is entitled to an accounting under the Operating Agreements or statute, that motion for declaratory judgment must be DENIED.

24.     Based upon the foregoing analysis, the Court concludes that the Summary Judgment Motion should be DENIED as to Plaintiff's First Claim.

### Inspection of Corporate Records and Accounting

25.     The Second and Third Claims for Relief allege that Kezeli is "entitled to access to all company records and an accurate accounting of company revenues, income, debt obligations, liabilities, distributions, and assets" for TAS and TAS Pro, respectively, both as

---

[30] Br. Supp. Summ. J. 8.
[31] Logan Ans. ¶ 41; Katinas Ans. ¶ 41.
[32] Logan Aff. ¶ 6.
[33] By contrast, the North Carolina's Uniform Partnership Act expressly provides partners with a statutory right to a "formal account as to partnership affairs," G.S. § 59-52.

a member of both companies and under G.S. § 57C-3-04.[34] For the reasons discussed *supra*, the Court declines at this time to find that Plaintiff is entitled to an accounting under the Operating Agreements or under North Carolina LLC statute.

26.    However, the Court finds that the Demand Letter does comply with the requirements of G.S. § 57C-3-04, which provides a member of an LLC with a right to inspect certain categories of company records upon a demand made in writing, for a proper purpose, and that describes with reasonable particularity the purpose of the demand and the records or information desired. Similarly, the TAS Operating Agreement entitles members to inspection of company records "upon reasonable notice," and the TAS Pro Operating Agreement states that records "shall be open at all times to inspection by each of the Members." The Demand Letter therefore entitles Kezeli to inspect certain company records, in accordance with the provisions of the Operating Agreements and 57C. It is undisputed that Logan, acting as CEO of TAS and TAS Pro, significantly delayed or otherwise failed to produce financial records upon demand by Kezeli.[35]

27.    Accordingly, as to Kezeli's Second and Third Claims for Relief, the Court therefore finds that the Summary Judgment Motion should be GRANTED in part and DENIED in part. To the extent that Defendants have not already produced to Kezeli any existing records[36] that fall within the categories enumerated in N.C. Gen. Stat. § 57C-3-04, Defendants shall produce this information within twenty (20) days of this Opinion and Order.

---

[34] Compl. ¶¶ 96, 100.

[35] *See, e.g.*, Compl. ¶ 57; Logan Ans. ¶ 57 ("TAS, at that time, did not provide Kezeli access to its corporate documents.").

[36] As will be discussed below, the Court declines to find at this time that the Companies were required to keep any specific types of records.

## Breach of Operating Agreements

28.     Kezeli's Fourth Claim for Relief alleges that Logan and Katinas breached the Operating Agreements by (a) "[f]ailing to hold confidential information in the strictest confidence," (b) "[d]enying Kezeli inspection of the Companies' books and records," (c) denying Kezeli's participation in management of the Companies, (d) "[d]enying Kezeli distributions based on his percentage interest in the Companies," and (e) "causing the Companies to fail to repay loans to Kezeli after demand of the same."  In his Brief, however, Kezeli argues that Logan and Katinas breached the Operating Agreements only by their failure to maintain adequate business and financial records and by the denial of Kezeli's requests to inspect the books, and the Court addresses only those alleged breaches of the Operating Agreements.

29.     It is undisputed that Logan did not maintain many of the basic records one would expect to be kept by an LLC.[37]  Although the TAS Operating Agreement does not expressly state what specific financial records are to be maintained, it does seem to require that at least some basic "books and records" be kept.  Similarly, the TAS Pro Agreement does not list specific records to be kept but expressly requires that "[t]he Company shall maintain adequate accounting records."  Both Operating Agreements provide that the LLC's will make the books and records available for inspection by members.  Despite this, Logan admitted that TAS and TAS Pro "never generated income statements, balance sheets, cash flow statements, bank reconciliations or check registers."[38]  It also is undisputed that Logan, acting as CEO of TAS and TAS Pro, significantly delayed or otherwise failed to produce

---

[37] Notably, the applicable Limited Liability Company Act contains no requirement for the specific types of records than an LLC must keep.  In fact, G.S. § 57C-3-04(b) specifically permits an LLC to "maintain its records in other than written form if the form is capable of conversion into written form within a reasonable time."

[38] Logan Aff. ¶ 5.

financial and other LLC records upon demand by Kezeli.[39]  Accordingly, Kezeli has established as a matter of law that Logan breached the Operating Agreements by failing to maintain adequate financial records for the companies and by refusing to timely permit access to and inspection of TAS and TAS Pro's books and records, and Kezeli's motion for summary judgment on the claim for breach of the Operating Agreements should be GRANTED as to these specific breaches.

### Request for Attorneys' Fees

30.      Kezeli seeks an award of attorneys' fees and costs incurred in enforcing North Carolina law and the Operating Agreements.  Traditionally, North Carolina law only allowed for recovery of attorneys' fees when provided for by statute, and contractual agreements attorney's fees were not enforceable.[40] *Harborgate Prop. Owners Ass'n, Inc. v. Mtn. Lake Shores Dev. Corp.*, 145 N.C. App. 290, 297-98 (2001). Chapter 57C provides for an award of attorneys' fees only in actions brought by members derivatively.  G.S. § 57C-8-01(f).  Kezeli has not pointed to any other statutory authority for an award of attorneys' fees.  Accordingly, Kezeli's request for attorneys' fees in conjunction with the Summary Judgment Motion should be DENIED without prejudice to Kezeli's right to seek attorneys' fees under appropriate authority at a later point in this case.

NOW THEREFORE, based upon the foregoing, it hereby is ORDERED that:

31.      As to Plaintiff's First Claim for Relief, Plaintiff's Motion for Partial Summary Judgment is DENIED.

---

[39] *See, e.g.*, Compl. ¶ 57; Logan Ans. ¶ 57 ("TAS, at that time, did not provide Kezeli access to its corporate documents.").

[40] In 2011, the North Carolina General Assembly enacted G.S. § 6-21.6, which made certain contractual agreements for reciprocal attorneys' fee enforceable when contained in business contracts.  That statute, however, was effective on October 1, 2011, and is not applicable to the two Operating Agreements at issue in this matter, both of which were entered into prior to that date.

32.     As to Plaintiff's Second and Third Claims for Relief, Plaintiff's Motion for Partial Summary Judgment is GRANTED, in part, and DENIED, in part. To the extent that Defendants have not already produced to Plaintiff any existing records that fall within the categories enumerated in N.C. Gen. Stat. § 57C-3-04, Defendants shall produce this information to Plaintiff in written form within twenty (20) days of this Opinion and Order.

33.     As to Plaintiff's Fourth Claim for Relief, Plaintiff's Motion for Partial Summary Judgment is GRANTED.

34.     Except as granted herein, Plaintiff's Motion for Partial Summary Judgment is DENIED.

SO ORDERED, this the 26th day of March, 2015.